385 A.2d 992

COMMONWEALTH ex rel. Janice WILLIAMS, Appellant,

v.

James MILLER.

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided April 13, 1978.

228

James J. DeMarco, Philadelphia, for appellant.

No appearance entered nor brief submitted for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order denying appellant visitation rights with her granddaughter.

Appellant is the maternal grandmother of Sarita Miller, who was born June 14, 1968; appellee is Sarita's father. Shortly after Sarita was born, her father and mother separated, and she and her mother went to live in the home of her mother's maternal aunt, Mrs. Odell Hagans. When Sarita's mother remarried, Sarita continued to live with Mrs. Hagans. On September 30, 1970, Sarita's mother died, and after litigation between appellee and Mrs. Hagans, custody was awarded to appellee on April 20, 1971, with visitation rights granted to Mrs. Hagans. Sometime in 1975 Mrs. Hagans became ill (later in the year she died), and on July 23, 1975, appellant filed the present petition seeking visitation rights for one weekend a month at the home of other of Sarita's maternal relatives in Philadelphia. (Sarita has always lived in Philadelphia; appellant lives in Brooklyn, New York.) Since Mrs. Hagans' death, no maternal relative has had the right to visit Sarita.

The lower court denied the petition, on a variety of grounds: (1) appellant is a stranger to Sarita; (2) enforced visitations away from the home to which Sarita is accustomed may be injurious to her health; (3) appellant waited four years after appellee got custody before she took this step to establish a relationship with Sarita; (4) appellant "abandoned her own daughter [Sarita's mother] as a small child, leaving her in the custody of others to care for" (Lower Court Opinion at 3); (5) appellee "mistrust[s]" appellant, "a feeling which [the lower court] cannot say with certainty is unfounded at this time" (Lower Court Opinion at 3).

The law of this Commonwealth on the visitation rights of grandparents is not clear.* *See Commonwealth ex rel. Goodman v. Dratch,* 192 Pa.Super. 1, 159 A.2d 70 (1959); *Commonwealth ex rel. McDonald v. Smith,* 170 Pa.Super. 254, 85 A.2d 686 (1952); *Commonwealth ex rel. Flannery v. Sharp,* 151 Pa.Super. 612, 30 A.2d 810 (1943); *Posin v. Rothkopf,* 49 Wash.Co. 4 (1968); *Commonwealth ex rel. Goodwin v. Goodwin,* 82 Mont.Co. 328 (1963). However, as to custody, we said recently that in a dispute between a parent and a third party, including a relative such as a grandparent, the parent has a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. *In re Hernandez,* 249 Pa.Super. 274, at 287, 376 A.2d 648, at 654–655 (1977). Since visitation is correlative to custody a similar test should apply when a third party seeks visitation, although the burden on the third party should not be so heavy, for an order granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody.

■ We recognize that any attempt to state such a test runs the risk of ending with a statement either too nebulous or too rigid. We must, nevertheless, make the attempt, and therefore offer the following: When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case. In a custody case, the third party must convince the court that it is in the child's best interest *to take custody* from a parent and award it to the third party. In a visitation case, the third party need only convince the court that it is in the child's best interest *to give some time* to the third party. As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.

* For a general discussion of developments in the area of grandparents' visitation rights, *see* "What Are the Visitation Rights of Grandparents in a Divorce?", The New York Times, Dec. 20, 1977, at 40.

*See,* by analogy, *Scott v. Scott,* 240 Pa.Super. 65, 70–71, 368 A.2d 288, 292 (1976) (Concurring Opinion by SPAETH, J.).

■ This test should not be understood as inviting visitation suits by well-meaning strangers. Almost by definition, a stranger to a child would have an extraordinarily heavy burden of proof to sustain in order to overcome the parent's right to uninterrupted custody. This point might be phrased differently: Except in extraordinary circumstances, the reasons that a stranger can offer are unlikely to be convincing. For example, the ability to provide some luxuries, or some creature comforts, would not be enough, just as it is not enough in custody cases. *Commonwealth ex rel. Holschuh v. Holland-Morritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 248 A.2d 63 (1968).

Applying the test we have now formulated, and bearing in mind that the scope of our review in custody cases is "quite broad," *Commonwealth ex rel. Gifford v. Miller, supra,* 213 Pa.Super. at 273, 248 A.2d at 66 (1968), we disagree with the lower court that appellant, as Sarita's grandmother, should be denied visitation rights.

First, we note that the court's finding that appellant abandoned her own daughter is not supported by the record. The only evidence on this point was a rhetorical question raised, and then answered, by appellee:

> Don't you think anytime a mother claims she loves her children she wouldn't drop them off down the river or set them on a doorstep? And then in later years she comes back and claims them.
>
> Q. [BY THE COURT] Is that what happened here?
> A. To the deceased, my wife.
>
> N.T. 14.

■ Second, appellee's "mistrust" of appellant is not a valid reason for denying visitation. The lower court could "not say with certainty" that this mistrust was "unfounded." Double negatives defeat rather than help understanding. ("He cannot say that it is not raining." Is it

raining?) Appellee offered no reason of substance for his mistrust; he said only that he thought appellant would "poison [Sarita's] mind" with "lies." N.T. 11. A custodial parent's suspicion of or animosity towards another parent or a third party seeking visitation should not alone warrant denial of visitation; otherwise the custodial parent could always effectively deny visitation simply by testifying to suspicion or animosity. Instead of deferring to suspicion or animosity, the hearing judge must try to determine whether there is any basis for these feelings. Stated more broadly, the judge must appraise whether the relationship between the disputing parties has an adverse effect on the child. *See Flannery v. Sharp, supra; LoPresti v. LoPresti*, 40 N.Y.2d 522, 387 N.Y.S.2d 412, 355 N.E.2d 372 (1976).

Third, the lower court did not, it seems to us, give sufficient consideration to the unusual facts of this case. In this regard we may take three of the lower court's reasons together: that appellant is a stranger to Sarita; that Sarita does not know appellant; and that appellant waited four years after appellee got custody before filing the writ for visitation. While these reasons have force, the fact remains that Mrs. Hagans had visitation rights under the 1971 decree giving custody to appellee; thus in the person of Mrs. Hagans a maternal relative maintained contact with Sarita. When it became apparent that because of illness Mrs. Hagans could no longer fulfill this role, appellant began her attempts to see Sarita: first, by asking permission from appellee, in April 1975 (N.T. 9), and next by filing her writ in July 1975.

Finally, if indeed there is any danger of harmful effects to Sarita by enforcing visitation away from her accustomed home, the danger may be avoided by specifying the place and conditions of visitation. We think it best to leave the precise disposition to the lower court, which may wish to have a further hearing on the matter.

Appellant has shown convincing reasons why it is in Sarita's best interest that she should be visited by appellant as her maternal grandmother. Except under unusual

circumstances, no child should be cut off entirely from one side of its family. *Commonwealth ex rel. Goodman v. Dratch, supra.* As said by the New Jersey Supreme Court, "[v]isits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship." *Mimkon v. Ford,* 66 N.J. 426, 437, 332 A.2d 199, 204 (1975). If animosities continue between the parties, and result in adverse effects on Sarita, as in *Flannery v. Sharp, supra,* a visitation order may be revised, even to the extent of retracting visitation. *Commonwealth ex rel. Bailey v. Sumner,* 193 Pa.Super. 79, 163 A.2d 677 (1960).

Order reversed. The case is remanded to the lower court for entry of a visitation order consistent with this opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, J., concurs in the result.

PRICE, J., dissents.