405 A.2d 1260

**COMMONWEALTH ex rel. Theodore Leroy FETTERS and Clark Lincoln Fetters, Appellants,**

v.

**Eugene K. ALBRIGHT and Reba Albright, Appellees.**

Superior Court of Pennsylvania.

Argued March 12, 1979.

Decided June 13, 1979.

Petition for Allowance of Appeal Granted Nov. 1, 1979.

Robert E. Campbell, Gettysburg, for appellants.

Eugene R. Hartman, Gettysburg, for appellees.

Before SPAETH, HESTER and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from an order denying a father custody of his sons Clark and Theodore, and granting custody to their maternal grandparents.

Clark was born September 10, 1963. When he was four years old, his parents' marriage broke up and he was placed with his maternal grandparents. N.T. at 21. Shortly thereafter, his parents reconciled, and on June 8, 1968, Theodore was born. N.T. at 21. The marriage broke up permanently after Theodore's birth, and for the next four years he and Clark lived with their maternal grandparents. N.T. 21. By court order in 1972, the mother was given permanent custody of the boys, with visiting privileges for their father. In the meantime, the mother had remarried and she and her second husband had a son, Andrew. That marriage also broke up, and until the summer of 1978 the three boys lived

with their mother, except for frequent visits to their grandparents. Clark and Theodore visited their father on a regular schedule. At the beginning of the summer of 1978, the mother left the three boys with their grandparents with the expectation of taking them back in the fall; however, on June 28, 1978, she died. The father then brought this petition for custody of his two children.

The lower court found that both the father and the grandparents would provide good homes for Clark and Theodore, and indeed, went on to say that "[o]rdinarily, this would have been a case where the father would have prevailed in his request for custody." The court nevertheless did not grant the father custody of his sons because they would necessarily have been separated from their stepbrother. The court stated: "The deciding factor was the third child. Perhaps it is a mark of the age in which we live that situations increasingly occur when siblings do not all have the same set of parents. However, these three boys are brothers, nonetheless, and to award custody of two to appellant would have meant a separation." Slip op. at 2.

In *Hooks v. Ellerbe*, 257 Pa.Super. 219, 390 A.2d 791 (1978), we said that "[w]hen the custody dispute is between a parent and a third party, including a relative such as a grandparent, the parent has a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party." *See also Commonwealth ex rel. Strunk v. Cummins*, 258 Pa.Super. 326, 392 A.2d 817 (1978); *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). We have also said that "in the absence of a compelling reason to the contrary, we believe that siblings should be raised together." *In re Custody of Myers*, 242 Pa.Super. 225, 230, 363 A.2d 1242, 1244 (1976); *see also Commonwealth ex rel. Steuer v. Steuer*, 244 Pa.Super. 302, 368 A.2d 732 (1976); *In re Russo*, 237 Pa.Super. 80, 346 A.2d 355 (1975); *Commonwealth ex rel. Martino v. Blough*, 201 Pa.Super. 346, 191 A.2d 918 (1963). The case before us, therefore, presents an explicit conflict between two important principles in the law of child custody.

■ In resolving this conflict we must begin by asking whether the lower court was correct in concluding that the need to keep the three children together was a reason "convincing" enough to defeat the father's bid for custody of his sons. Both Clark and Theodore testified at the custody hearing. Clark expressed a fear that their step-brother would be "lost" if they were separated from him. N.T. 35. Clark also said: "I just rather keep a stable home with my grandparents and all three of us living together than breaking us up and putting us into separate homes and forget our brotherhood and loving one another." N.T. 37. While Clark and Theodore expressed a preference for living with their grandparents, they both suggested that they could become reconciled to living with their father. N.T. 36, 40. Considering all of the testimony, we think the lower court erred in denying the father custody of his sons. The father has shown his devotion to the boys, regularly visiting them while they were with their mother. Their mother having died, it was eminently natural that the father should seek custody of his sons. The lower court found that if given custody, he would provide a good home for them. While some weight must be given the boys' stated prefer-ence, neither of the boys could point to any serious adverse effects that a separation from Andrew would have on *them*. Although Andrew's welfare is obviously a concern to all parties, he is not the subject of this action. His father may eventually seek custody of him, which might result in his separation from Clark and Theodore. This may not happen, for the grandparents said they did not know where An-drew's father was. However, if Andrew stays with his grandparents, he has them to fall back on for support and guidance. Moreover, the father and grandparents live close together, so that Clark and Theodore can provide brotherly support if they are able to visit Andrew regularly.

■ Although no reason appears to find that the father has forfeited his prima facie right to custody of his sons, the grandparents have certainly made a strong showing in sup-port of liberal visiting privileges. In *Commonwealth ex rel.*

*Janice Williams v. James Miller,* 254 Pa.Super. 227, 385 A.2d 992, 994 (1978) we said:

> When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case. . . . In a visitation case, the third party need only convince the court that it is in the child's best interest to *give some time* to the third party. As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.

Here, the grandparents have shown their devotion to Clark and Theodore over the years. In addition, Andrew would benefit greatly from seeing Clark and Theodore regularly. We believe, therefore, that while the father should have custody of his sons, the grandparents should be given liberal visiting privileges. Since the lower court is better able to set the terms of such privileges than we are, we shall remand the case for that purpose.

Reversed and remanded.