429 A.2d 17

COMMONWEALTH ex rel. Ignatius ZAFFARANO and
Marion Zaffarano

v.

Richard GENARO.

Appeal of Ignatius ZAFFARANO and Marion Zaffarano.

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed April 24, 1981.

Petition for Allowance of Appeal Granted June 22, 1981.

Robert J. Kerns, Lansdale, for appellants.

Mark E. Weand, Jr., Ambler, for appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Ignatius and Marion Zaffarano, maternal grandparents of Shannon Genaro, the two and one-half year old daughter of appellee, Richard Genaro, have appealed from the lower court's dismissal of their petition for visitation [1] filed against

1. In their original petition, as well as on appeal, the Zaffaranos requested "visitation" with Shannon. Although the term "visitation" has been used to refer both to situations in which the party seeking visitation seeks to visit with the child only, as opposed to taking possession of the child, and situations in which the party seeking visitation seeks to possess the child, i. e., to take the child outside of the home environment of the custodial party, we found in *Commonwealth ex rel. Rosequist v. Rosequist*, 216 Pa.Super. 388, 393, 268 A.2d 140, 143 (1970), that "[t]he common meaning of the term visit . . . means the right of the parent to go to see the child wherever he might be and does not include the right of the parent to take possession of the child." In *Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976), we dealt with a situation in which a father sought "visitation rights" with his son, and after a hearing, an order was entered stating that he was to have "partial custody away from home of the mother" with the child. In *Scott*, the child lived with the mother and her parents, neither of whom got along with the father. The order took this into account, stating further that "Father to have no contact with the mother or maternal grandparents." On appeal, the mother contended, *inter alia*, that the trial court erred in awarding the father partial custody since he only requested visitation, citing the definition of "visitation" contained in *Rosequist*, supra. We stated that:

We agree that Charles [the father] was awarded *partial* [emphasis in original] custody rather than visitation, however we do not agree that it was error to do so. The trial judge found that ill will, altercations and arguments arose between Charles and Virginia and her parents. Since the child resides with Virginia and her parents, it is clear that visitation would not be proper. Therefore, the only alternative is to allow Charles to visit his son out of the presence of Virginia and her parents. *This alternative is by definition partial custody. To deny this type of relief merely because Charles, in his petition, used the term visitation instead of partial custody would cause an unfair result simply on the basis of technicality and semantics.* Charles wanted only to see his son. Accordingly, the lower court had full authority to enter this order which is correct and proper under the circumstances of this case.

appellee after he cut off their visitation with Shannon in February, 1980. We reverse.

Appellants contend that it is in Shannon Genaro's best interests that they be granted partial custody of her. They maintain that they have always shown their love and devotion for Shannon and that they desire to continue the relationship they have established with her. It is in Shannon's best interests, they assert, to continue to have a close, loving relationship with her closest maternal relatives.

The denial of permission to see Shannon stems from the untimely death of appellee's wife, Carmella, on December 9, 1979, as a result of injuries sustained in a car accident. While she was alive, Carmella Genaro had frequently taken Shannon to visit with her parents, the appellants, at their home nearby. The Zaffaranos played with Shannon, took her shopping, took her to see the ducks in a nearby pond, and, in general, bestowed upon her the special love and affection that grandparents hold for their grandchildren. This pleasant state of affairs was shattered, however, when Carmella Genaro was hospitalized in September, 1979 following the accident. During the period of her hospitalization, a very emotional period for both her husband and appellants, strain developed between Richard Genaro and appellants. Despite the strained relations, however, appellee continued to bring Shannon to see the Zaffaranos a few times a week. In mid-February, 1980, following an argument with his sister-in-law, Donna Zaffarano, appellee cut off all contact with Shannon.

Id., 240 Pa.Super. at 67, 368 A.2d at 290 (emphasis added).

In his concurring opinion in *Scott,* Judge Spaeth suggested that the term "partial custody" be limited "[t]o cases where psychological considerations, as in the present case, or geographical reasons, [citation omitted] ... require that the non-custodial parent see the child out of the presence of the custodial parent." Id., 240 Pa.Super. at 69, 368 A.2d at 291.

We hold here that despite the fact that the grandparents used the term "visitation" in their pleadings and brief, that they actually seek partial custody here. Since we find, in light of the facts presented, the rationale of the *Scott* case, supra, to be apt here, we will treat the case as one in which partial custody is being sought, and will therefore use the term "partial custody" in our opinion, rather than the term "visitation" where appropriate.

The court below based its decision on two grounds: that grandparents do not have a right of visitation;[2] and that because of the animosity existing between appellee and the Zaffaranos, visitation would not be in the child's best interests.

With respect to the first ground, the court cited no authority. Appellee, in his brief, cites the case of *Wick v. Wick*, 266 Pa.Super. 104, 403 A.2d 115 (1979), for the proposition that grandparents have no inherent right of visitation. Appellee refers to a portion of the opinion in which we stated that "Appellants have not cited any cases to convince us that grandparents . . . have a *right* to visit with a child." Id. at 116. (Emphasis in original.)

*Wick*, supra, involved an unusual factual situation in which both an aunt and uncle *and* the child's grandparents sought visitation; and they appealed jointly from the lower court's denial of visitation as to both. The mother was willing to allow visitation with the grandparents but not with the aunt and uncle. The grandparents, however, would not agree to visitation without the aunt and uncle being present as well. We affirmed, but not on the basis that neither grandparents nor aunts and uncles have an inherent right of visitation. Rather, our decision was based on the peculiar facts of the case.

Although it may be true that third parties in general have no inherent legal right of either visitation or partial custody, the test to be applied in situations in which a third party seeks visitation or partial custody was set forth in *Commonwealth ex rel. Williams v. Miller*, 254 Pa.Super. 227, 385 A.2d 992 (1978):

In a visitation case, the third party need only convince the court that it is in the child's best interest *to give some time* to the third party. Id., 254 Pa.Super. at 230, 385 A.2d at 994. (Emphasis in original.)

**2.** We shall assume here that the lower court meant "partial custody" and not just visitation, even though the opinion speaks only about visitation.

The question presented for our determination, therefore, is not whether the Zaffaranos, as Shannon's grandparents, have a *right* to visit with her or to have partial custody; it is whether or not it would be in Shannon's best interest to grant the Zaffaranos some time with her.

The second ground upon which the court below based its decision was the hostile relationship between the parties.

In *Miller*, supra, a case factually similar to the case at bar; appellant, the maternal grandmother of appellee's daughter, sought visitation with the child after the death of appellee's wife. The lower court had denied appellant's petition because *inter alia*, appellee mistrusted appellant. We reversed, holding that

[A]ppellee's "mistrust" of appellant is not a valid reason for denying visitation... *A custodial parent's suspicion of or animosity towards ... a third party seeking visitation should not alone warrant denial of visitation*; otherwise the custodial parent could always effectively deny visitation simply by testifying to suspicion or animosity. Id., 254 Pa.Super. at 231–232, 385 A.2d at 995. (Emphasis added.)

Appellee relies heavily on two cases involving visitation by grandparents decided prior to *Miller*: *Commonwealth ex rel. Flannery v. Sharp*, 151 Pa.Super. 612, 30 A.2d 810 (1943); and *Commonwealth ex rel. McDonald v. Smith*, 170 Pa.Super. 254, 85 A.2d 686 (1952).

*Flannery*, supra, involved a situation in which grandparents sought partial custody of their deceased son's child. The child's mother had remarried and bitterness had developed between her and the grandparents culminating in her decision to deny appellants any contact with the child. The grandparents took matters into their own hands, obtaining ex parte orders of court which resulted in a deputy sheriff being sent to the mother's home on several occasions to take the child for partial custody purposes. Each time, the child refused to go, and, on one occasion, was taken forcibly. Although the lower court found that this tug-of-war had caused the child emotional harm, it nonetheless entered a

decree permitting visitation. Matters did not improve, however, and the child's health became endangered by the constant conflict. We reversed, holding that despite the fact that the grandparents were deeply attached to the child, "[T]he health and welfare of a child must not be shattered in the crossfire of supposedly conflicting legal rights as to its custody." Id., 151 Pa.Super. at 617, 30 A.2d at 812. In *Flannery*, supra, there was testimony by the child's physician that the child had intestinal disturbances due to the hostile relations between the parties and was becoming "neurotic." The record of the case at bar contains nothing which would indicate that Shannon Genaro has ever suffered emotional or physical harm as a result of the relationship between her father and appellants. We find the rationale of *Flannery* to be inapposite here.

In *McDonald*, supra, appellant-father sought modification of the lower court's order allowing the child's grandparents visitation rights. We found that there existed between appellant and the grandparents "[a] deep and apparently irreconcilable animosity" and held that it was not in the best interest of the child "[t]o subject her to an atmosphere of hate and estrangement." Id., 170 Pa.Super. at 258, 85 A.2d at 687–688.

In the instant case, the bad feelings that developed between appellee and the Zaffaranos arose from Carmella Genaro's hospitalization, when both parties were understandably distraught. Mr. Genaro's only testimony with respect to the existence of hostile feelings between him and the Zaffaranos concerned one occasion, which took place in the hospital during the time his wife was in a coma, on which he claimed to have overheard the Zaffaranos say something "nasty" about him. No testimony was presented with regard to hostile acts on the part of the Zaffaranos, such as found in *Flannery v. Sharp*, supra, or to arguments between the parties or as between the grandparents and the child. When asked whether, subsequent to the occasion he had related, the Zaffaranos had ever said anything nasty to him personally, appellee replied, "No, not really, no." It is

equally significant to note that when asked about his feelings toward appellee, Mr. Zaffarano testified that he harbored no "ill will" toward him and that in making that statement he was speaking for his wife as well.

We find that there does not exist between these parties an "irreconcilable animosity" such as we found to exist in *McDonald*, supra. The situation here is closer to a temporary falling out than to a permanent estrangement.

■ We hold that appellants have shown that it would be in their grandchild's best interests to allow them partial custody of her. The record indicates that a pattern of frequent visitation existed up until February, 1980 and that the visits were pleasant and happy. The relationship between young Shannon and her grandparents appears to be a happy one, filled with love and affection on both sides. Although Shannon is but two and one-half years of age, we believe that she is capable of appreciating and cherishing her grandparent's affection and would experience a terrible loss if denied the opportunity to see and be with them on a regular basis. As we stated in *Williams v. Miller*, supra:

> Except under unusual circumstances, no child should be cut off entirely from one side of its family. *Commonwealth ex rel. Goodman v. Dratch*, [citation omitted]. As said by the New Jersey Supreme Court, "[v]isits with a grandparent are often a precious part of the child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. *Mimkon v. Ford*, 66 N.J. 426, 437, 332 A.2d 199, 204 (1975).

In this regard, we think it relevant to note that when the court asked appellee, "Don't you think it would be nice for the little girl to grow up knowing who her mother's people were?" He answered, "Of course."

Our paramount consideration here is what is in the best interests of Shannon, which includes her happiness, training and development as well as her moral, physical and spiritual well-being. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380; *In re Snellgrose*, 432 Pa.

158, 247 A.2d 596 (1968). Based on the record, we conclude that awarding partial custody to the grandparents would add measurably to Shannon's happiness, well-being and development. The Zaffaranos take Shannon on outings, play with her, open her eyes to new experiences, and, most important, give her love and affection. In a recent case concerning a custody fight between a parent and grandparents, *Commonwealth ex rel. Fetters v. Albright*, 266 Pa.Super. 583, 405 A.2d 1260 (1979), we reversed and awarded custody to the father [3] but held that the grandparents should be granted visitation,[4] stating:

> Here, the grandparents have shown their love and devotion to [the sons] over the years... We believe, therefore, that while the father should have custody of his sons, the grandparents should be given liberal visiting privileges. Id. at 1262.

Similarly, in the case of *Commonwealth ex rel. Goodman v. Dratch*, 192 Pa.Super. 1, 159 A.2d 70 (1959), we upheld the order of the lower court allowing visitation by appellee-grandparents, despite bitter relations between the child's father and stepmother and the grandparents because the record indicated that there was great love and affection between the child and the grandparents. As Judge Ervin stated so aptly:

> The order provides for visitation and visitation only. We consider it to be almost inhuman to completely isolate the child from his grandparents. If the parties will cooperate with heart and hand for Michael's best interests, the order will be a help and not a hinderance in the development of Michael's promising personality. *Unless there be some compelling reason, we do not believe that a grandchild should be denied visitation to his grandparents.* Id., 192 Pa.Super. at 3–4, 159 A.2d at 71. (Emphasis added.)

**3.** It should be noted that subsequent to our decision, our Supreme Court reversed and awarded custody to the grandparents. 491 Pa. 320, 421 A.2d 157 (1980).

**4.** Again, we wish to note that "visitation" was used in *Albright* as encompassing the right to possess the child, i. e., "partial custody" even though the opinion refers only to "visitation."

We find Judge Ervin's words to be as relevant today as when the *Goodman,* supra, case was decided. Here, we can find no compelling reason why partial custody should be denied.

Accordingly, the order of the trial court denying visitation to the grandparents is reversed and the case is remanded for the parties to amicably establish a schedule of partial custody for the grandparents, appellants herein, with the child, Shannon Genaro; or, in the alternative, to hold a hearing to establish the partial custody program.

HOFFMAN, J., concurs in the result.