**Herron v. Seizak**

*Sanford S. Finder,* for plaintiffs.
*Oliver N. Hormell,* for defendants.

GLADDEN, *J.,* October 22, 1982—Plaintiffs, Laverne D. Herron and Frances E. Herron, maternal grandparents of Patricia Mae Seizak, have filed this complaint for visitation against defendants, Patrick Seizak and Mona Seizak, asking the court to grant them visitation rights. Patricia Mae Seizak is the daughter of the defendants herein. Patrick and Mona Seizak are currently married and live with each other and their daughter at 1054 Shutterly Avenue, California, Washington County, Pa.

Defendants filed preliminary objections to plaintiffs' complaint in the nature of a demurrer assigning the following reasons:

(a) The court lacked jurisdiction over the subject matter.

(b) The complaint fails to state a claim against defendants.

(c) The complaint fails to cite any contract or law which entitles the plaintiffs to visitation under existing circumstances.

Preliminary objections should be sustained only in cases which are clear and free from doubt. Legman v. Scranton School District, 432 Pa. 342, 247 A.2d 566 (1968). To sustain preliminary objections in the nature of a demurrer, it must appear

with certainty that, upon the facts averred, the law will not permit recovery by plaintiff. Schott v. Westinghouse Electric Corp., 436 Pa. 279, 282, 259 A.2d 443, 445 (1969). In the instant case, upon the facts averred, there is no legal remedy for plaintiffs, and, therefore, we sustain defendants' preliminary objections.

Both plaintiffs and defendants herein agree that the Custody and Grandparents Visitation Act, 23 P.S. 1001, et seq., Act of November 5, 1981, P.L. 322, no. 115, §§1 to 15, does not apply to this dispute. As expressed in section 1002, the policy behind this act is "to assure a reasonable and continuing contact (for children) . . . with both parents after a separation or dissolution of marriage". Sections 1012, 1013 and 1014 of the act set forth the rights of grandparents to seek visitation with their grandchildren under certain enumerated circumstances. The act says that visitation rights may be granted, with the unmarried child of a deceased parent, to the parents or grandparents of that deceased parent; that visitation rights may be granted, with an unmarried child, to the parent or grandparent of a party after the dissolution of marriage; and, finally, that visitation may be granted, with an unmarried child, to his grandparents or great-grandparents if the child has resided with his grandparent or great-grandparents for a period of 12 months or more and is subsequently removed from the home by the parents. These visitation rights may be granted only if they are found to be in the best interests of the child *and do not interfere with the parent-child relationship.* (Emphasis supplied.) Clearly, none of these enumerated circumstances apply here. The Herrons' daughter, Mona Seizak, is married and living with her husband and their child, Patricia. The Herrons

seek visitation privileges over the objection of their daughter, the child's natural mother.

In their brief, plaintiffs argue that, beyond those rights given grandparents by the Custody and Grandparents Visitation Act, the court has common law authority to grant visitation to a child's grandparents over the objections of the child's natural parents when such visitation is in the best interest of the child. Cases cited by plaintiffs to support this assertion are not factually similar to the instant case, and thus their holdings are of little precedential value here. In Com. ex rel. Goodman v. Dratch, 192 Pa. Super. 1, 159 A.2d 70 (1960), maternal grandparents sought visitation with their *deceased daughter's* (Emphasis supplied) child, over the objections of the child's father. In Com. ex rel. Williams v. Miller, 254 Pa. Super. 227, 385 A.2d 992 (1978), a natural grandmother, after the *death of her divorced daughter* (Emphasis supplied), sought to establish visitation rights with her granddaughter who had been in the custody of her daughter's ex-husband. In Com. ex rel. Zaffarano v. Genaro, 286 Pa. Super. 440, 429 A.2d 17 (1981), maternal grandparents sought visitation rights with their granddaughter after the death of their daughter (Emphasis supplied) and again over the objections of the child's father. In each of these cases, the court found it to be in the best interests of the child to permit visitation with the grandparents. However, in each instance the natural mother of the grandchild had died and was thus unable to permit or deny her parents' privilege to visit with their grandchild. The court, therefore, was called upon to act in her behalf and to thus insure a continuing relationship with the deceased mother's family.

Our research of the case law has failed to establish an enforceable right of visitation in grandpar-

ents when a living, married parent of the grandchild has interposed an objection to the visitation with his or her own parents. The custody and Grandparents Visitation Act is a restatement and expansion of the case law, and we are governed thereby.

The case law most nearly on point is found in Com. ex rel. Dogole v. Cherry, 196 Pa. Super. 46, 173 A.2d 650 (1961). There, the mother of a deceased adoptive mother sought visitation with the adoptive grandchild over the objections of the new adoptive mother and her daughter's former husband, the adoptive father. In this case visitation privileges were denied, and the court explained:

"It is our opinion that adoptive or natural parents should have the right to select the persons with whom their child will associate as long as they properly perform their duties to the child. To take this right away from proper parents would not be for the best interest of the child." at 173 A.2d 651.

We can do no more than apply this law to the facts that have been pled in plaintiffs' complaint. Plaintiffs' own daughter objects to her parents seeing their grandchild. Her husband joins in the objection. The court should not be asked to drive a wedge into an intimate family circle, even though we would hope that in this case that circle could expand someday to include the grandparents. The natural father and mother must be recognized as the two people responsible for the development of their child. We will not second guess them absent a clear showing that what they have done is not in the best interest and welfare of their child.

## ORDER

And now, this October 22, 1982, after argument, the court sustains the preliminary objections filed

by defendants to plaintiffs' complaint and dismisses the action. All parties to bear their own costs.

## DISSENTING OPINION

SWEET, *P. J,.* November 22, 1982—I agree with the majority that the Custody and Grandparents Visitation Act, 23 P.S. § 1001, et seq., Act of November 5, 1981, P.L. 322, no. 115, Sections 1 to 15, does not apply to this dispute. I do think, however, that it is expressive of a public policy more favorable to grandparents than the majority opinion would allow for. The case of Com. ex. rel. Zaffarano v. Genaro, 286 Pa.Super 436, 429 A.2d 17, (1981) cited in the defendant's brief seems to me to allow us to grant this visitation. It is true that Zaffarano, supra, is not on all fours because the wife/parent is dead. However, the Superior Court said quoting itself in an earlier case[*]:

"In a visitation case, the third party need only convince the court that it is in the child's best interest to give some time to the third party."

Judge Brosky went on to say:

"The question presented for our determination, therefore, is not whether the Zaffaranos, as Shannon's grandparents, have a right to visit with her or to have partial custody; it is whether or not it would be in Shannon's best interest to grant the Zaffaranos some time with her."

Judge Brosky also said:

"We hold that appellants have shown that it would be in their grandchild's best interests to allow them partial custody of her."

[*]Commonwealth ex rel. Williams v. Miller, 254 Pa.Super. 227, 385 A.2d 992 (1978).

Quoting themselves in Miller, supra, again the Superior Court said:

"Except under unusual circumstances, no child should be cut off entirely from one side of its family."

They concluded this:

"Based on the record, we conclude that awarding partial custody to the grandparents would add measurably to Shannon's happiness, well-being and development."

In this rather long opinion, Judge Brosky supported his position with citations from Commonwealth ex rel. Holschuh v. Holland-Moritz, 448 Pa. 437, 292 A.2d 380; In re Snellgrose, 432, Pa. 158, 247 A.2d 596 (1968); Commonwealth ex rel. Fetters v. Albright, 266 Pa.Super. 583, 405 A.2d 1260 (1979) and Commonwealth ex rel. Goodman v. Dratch, 192 Pa.Super. 1, 159 A.2d 70 (1959). This last case by a seven man unanimous Superior Court said:

"Unless there be some compelling reason, we do not believe that a grandchild should be denied visitation to his grandparents."

In the Miller, supra, case which has been cited twice in the Zaffarano, supra, case herein before, there is an opinion by Judge Spaeth for a six to one majority. Head note one, three and five seem material.

"1. When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody; however, reasons need not be so convincing as in a custody case; in a visitation case third party need only convince court that it is in the child's best interest to give some time to the third party, and as the amount of time requested moves the visit further from a visit and closer to custody, reasons offered in support of request must become correspondingly more convincing."

"3. A custodial parent's suspicion or animosity towards another parent or a third party seeking child visitation should not alone warrant denial of visitation."

"5. Except under unusual circumstances, no child should be cut off entirely from one side of its family."

Assuming the validity of these cases, it is incorrect to say that the court lacks jurisdiction over the subject matter or that the complaint fails to state a claim. It very well may be that Laverne D. Herron, et ux can not show sufficiently convincing reasons, but they have not had an opportunity to do so. This case was decided by sustaining preliminary objections. In short, our majority has held that we will not listen to grandparents qua grandparents. They say: "We will not second-guess parents who object to grandparents having contact with the child and will not afford them an opportunity" to show cause.

Domestic relations' law should fit the realities of the society from which it springs and which it seeks to govern. A grandparent who has some contact with the child is more likely to include the child in his testimonial bounty and he or she is more likely to help in higher education or when disasterous illness strikes. If one thinks of the family, not as the soap opera father, mother and two-children nucleas family, but as a line of people stretching from the time of the Norman conquest or wherever on into the future, he can not possibly believe that it is sound social policy to snip this, as Atropos cut a thread.

The majority's arbitrary assumption that the parents are always the closest disregards a social reality often present in the black community. Many, many black children are raised by grandmothers. Today's holding insures that a grandmother can raise a child

for ten, 12 or 14 years and then if the mother returns somewhat more matured and ready to settle down, and takes the child away from the grandmother she may never see him again.

I am aware that I am possibly opening Pandora's box a little and that we may be beset with claims not only from aunts and uncles but kooks, weirdos and tortious intermeddlers. The case law has already provided for this.

Judge Spaeth in Miller, supra, put it this way:

"This test should not be understood as inviting visitation suits by well-meaning strangers. Almost by definition, a stranger to a child would have an extraordinarily heavy burden of proof to sustain in order to overcome the parent's right to uninterrupted custody. This point might be phrased differently: Except in extraordinary circumstances, the reasons that a stranger can offer are unlikely to be convincing. For example, the ability to provide some luxuries, or some creature comforts, would not be enough, just as it is not enough in custody cases."

Judge Spaeth ended the Miller, supra, opinion by saying:

"[v]isits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship."

It is part of our received culture to "Honor your Father and Mother"; I would let this apply to defendants here also.