## Ritter v. Ritter

*Charles E. Fitzpatrick,* for petitioners.
*Linda K. M. Ludgate,* for respondent.

EHRLICH, *J.,* August 2, 1985—Petitioners are the paternal grandparents and respondent is the mother of Audrey Elizabeth Ritter, who was born on March 23, 1983. Tragically, Audrey's father, George L. Ritter, respondent's husband and petitioners' son, died in an automobile accident on April 30, 1983. Petitioners (hereinafter referred to as grandparents) have requested visitation with Audrey pursuant to the Custody and Grandparents Visitation Act, 23 Pa. C.S. §1012. It is clear that petitioners fall within the category of grandparents covered by this section of the act. The issue in dispute is whether visitation would be in the best interest of the child and would not interfere with the parent-child relationship.

Audrey's mother and father lived in a trailer on petitioners' property in Tilden Township from the time of their marriage until the death of the husband. Following his death, there were emotional disagreements regarding the baby's christening ceremony and regarding the ownership of certain items of tangible property. The latter dispute resulted in litigation initiated by the mother to recover the items. However, there is no indication of any animosity prior to the death of George L. Ritter. On the contrary, even in the replevin action the mother stated that in the past their relationship had been "amicable and friendly." Indeed, the parties visited back and forth frequently, even daily, and the grandmother baby-sat with the infant during the short time after her birth before the present litigation. The extent of this contact is necessarily limited by the fact that the child was less than two months old when her father died.

The philosophy behind the Grandparents Visitation Act is that it is normally beneficial for a child to have some relationship with both sides of her ancestry, and that relationships with grandparents are generally of special value. This principle may be negated, however, when the best interests of the child would not be served by such continuing relationship, either because of some deficiency of the grandparents or because the severity of the hostility outweighs any possible benefit.

In the present case, most of the testimony regarding the estrangement revolves around the replevin action filed by the mother to recover certain personal property. Although it was ultimately determined that most (but not all) of the items were her property, the grandparents' position was not without rational basis. All of the items in question had origi-

nally belonged to the grandparents or had been gifts from them to their son and/or his wife. There were, however, many other items which the mother removed without serious problem.

Further, the ultimate resolution included the grandparents retaining certain items in exchange for payment to the mother. Without in any way condoning the grandparents' actions, especially their contemptuous conduct, it must be weighed against the prior history of a close family relationship.

As in all child custody matters, this case must be decided on the basis of its particular facts. The case of Commonwealth ex rel. Zaffarano v. Genaro, 500 Pa. 256, 455 A.2d 1180 (1983), cited by the mother, is essentially inapposite. In that case, the situation included allegations by the grandparents that the surviving parent was responsible for the death of their daughter, as well as accusations on both sides of unfitness. The most important distinction, however, between the Zaffarano case and this one is that in Zaffarano the grandparents were demanding partial custody, or the right to remove the child from the father's control for the visits. In fact, the opinion states that the father had no objection to the grandparents visiting the child in his presence.

By contrast, in the present case there is not even a hint that the grandparents have criticized the mother as a mother, nor that they have in any way blamed her for the loss of their son. Nor is there any indication that the mother questions the fitness of the grandparents as in Zaffarano, where there were allegations of alcoholism and psychiatric disability. The dissension in this case is based almost exclusively on the grandparents' exaggerated possessive-

ness of items of tangible property, all of which were associated with their deceased son.

Although it had not yet been decided at the time of the hearing in this case, the case of Commonwealth ex rel. Miller v. Miller, 478 A.2d 451 (1984) is almost identical in its facts to the case sub judice, including the proximity of residence, the death of a son in an accident, and subsequent estrangement because of financial and legal differences. We believe the Miller case to be so similar to the case under consideration as to be binding upon this court. Just as in Miller, the discord between the parties followed but did not precede the death of the child's father. Moreover, none of the discord related to the child herself or her care or possessions.

These grandparents are approximately 64 and 70 years of age. They are asking for the barest minimum of contact with their only grandchild, and have limited their request to visitation. This obviates any need to consider the grandparents' ability to supervise Audrey as was required in the Miller case, supra, where the grandparents were asking for partial custody and allegedly were not sufficiently attuned to the supervision needed by a toddler.

The likelihood of benefit to the child from being acquainted with her deceased father's parents far outweighs any possible detriment based on the dispute between her mother and them regarding some items of property, however ill-advised their conduct may have been.

There is nothing to indicate any likelihood of a recurrence of such dissension or dispute. Our observation of the parties at the time of the hearing leads us to conclude that they will be able to put the prior litigation behind them for the sake of Audrey's best interests.

For the above reasons, we enter the following

## ORDER

And now, August 2, 1985, after hearing, plaintiffs are granted visitation with their granddaughter, Audrey E. Ritter. Said visitation shall commence following the grandparents participation in up to three counseling sessions with a counselor to be agreed upon by the parties.

Respondent shall have the right to waive the counseling requirement. Should the parties be unable to agree on a counselor, the court will appoint a counselor for this purpose.

The time, location, and supervision of the visits with the child shall be as determined by the mother, and shall commence with weekly visits of one-half hour for the first five visits, to be increased to three-quarters of an hour for the next five visits, and thereafter for one hour.

The costs of the counseling and of this proceeding shall be borne by petitioners.