J-S33045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| W. AND J.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| R.B. | |
| Appellant | No. 2 WDA 2016 |

Appeal from the Order Entered December 11, 2015
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 10385-2015

BEFORE:  GANTMAN, P.J., OLSON, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED MAY 17, 2016**

Appellant, R.B. ("Mother"), appeals from the order entered in the Beaver County Court of Common Pleas, which granted Appellees, W. and J.M. ("Paternal Grandparents"), partial physical custody of Child, A.M.  We affirm.

The relevant facts and procedural history of this case are as follows. Mother and Father had Child in 2010; they never married.  Following Child's birth, Mother, Father, and Child lived with Paternal Grandparents for several months until Mother and Father ended their relationship.  The court subsequently entered a temporary custody order on September 15, 2014, which granted Mother primary physical custody and Father partial physical custody, subject to Paternal Grandmother's supervision due to Father's drug

_____

*Former Justice specially assigned to the Superior Court.

addiction problems. Father unexpectedly died on February 18, 2015, and Mother prevented Paternal Grandparents from seeing Child.

On March 30, 2015, Paternal Grandparents filed a petition for partial physical custody or visitation, and the court conducted a pre-hearing conference on April 21, 2015. The court entered a proposed order on April 29, 2015, which granted Paternal Grandparents partial physical custody and shared legal custody with Mother. Mother filed exceptions on May 19, 2015. The court conducted custody hearings on October 14, 2015, and December 3, 2015. The court entered an order on December 11, 2015, which granted partial physical custody to Paternal Grandparents and sole legal custody to Mother. Specifically, the order permits Paternal Grandparents to have physical custody of Child on the 3rd weekend of every month, one day before or after Thanksgiving, Christmas, and Child's birthday, and seven consecutive days during the summer if Paternal Grandparents have plans for "substantial travel," or two 3-day periods during the summer if there are no plans for travel. On December 31, 2015, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following issues for our review:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ADEQUATELY ADDRESS ALL CUSTODY FACTORS PURSUANT TO 23 PA.C.S. § 5328(A).
>
> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY NOMINALLY AWARDING [MOTHER] SOLE LEGAL CUSTODY,

> BUT EFFECTIVELY AWARDING [PATERNAL] GRANDPARENTS SHARED LEGAL CUSTODY, FOR WHICH THE COURT ITSELF ACKNOWLEDGED [PATERNAL] GRANDPARENTS DID NOT HAVE STANDING.
>
> WHETHER THE TRIAL COURT ERRED IN FAILING TO COMPLY WITH PRECEDENT SET BY *TROXEL V. GRANVILLE* AND *HILLER V. FAUSEY*.
>
> WHETHER THE TRIAL COURT ERRED IN ITS CONSIDERATION OF MOTHER'S ENCOURAGING THE GRANDPARENT-GRANDCHILD RELATIONSHIP.
>
> WHETHER THE TRIAL COURT ERRED IN GRANTING MORE EXTENSIVE CUSTODY RIGHTS THAN HAD BEEN PREVIOUSLY ESTABLISHED.

(Mother's Brief at 4).

In her issues combined, Mother argues Paternal Grandparents should not have been awarded partial physical custody of Child. Mother states the court's analysis failed to consider all of the custody factors in Section 5328(a), and improperly elevated the factors in 23 Pa.C.S.A. § 5328(c). Mother claims the court's order permitting Paternal Grandparents to have custody of Child for seven consecutive days during the summer effectively awards them legal custody of Child. Mother asserts that permitting Paternal Grandparents to take Child somewhere that requires "substantial travel" unduly fringes upon Mother's rights as a fit parent, as it allows Paternal Grandparents to make decisions regarding Child's care and control without Mother's consent. Mother also contends the court's order failed to comply with *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) and *Hiller v. Fausey*, 588 Pa. 342, 904 A.2d 875 (2006), which

- 3 -

held, respectively, that parents have a fundamental right to make decisions for their children, and that grandparents' relationships with grandchildren do not outweigh this fundamental right. Mother alleges the court also improperly used her encouragement of Paternal Grandparents' relationship with Child to sever Mother's right to the care, custody and control of Child. Mother maintains it was in error for the court to grant Paternal Grandparents more extensive custody rights than were previously established. Mother concludes we should vacate the trial court's custody order and remand with instructions to dismiss Paternal Grandparents' complaint. We disagree.

In custody cases, the relevant scope and standard of review are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)). "On issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *R.M.G., Jr., supra*.

- 4 -

> The parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*Id.* (quoting *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super. 2002)). "Indeed, our admittedly circumscribed standard of review does not preclude this Court from finding that a trial court abused its discretion in fashioning a custody order. While prudence dictates that we exercise our authority sparingly, we are not powerless to rectify a manifestly unreasonable custody order." *V.B. v. J.E.B.*, 55 A.3d 1193, 1200 (Pa.Super. 2012). "Ultimately, the test is 'whether the trial court's conclusions are unreasonable as shown by the evidence of record.'" *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa.Super. 2006) (quoting *Dranko v. Dranko*, 824 A.2d 1215, 1219 (Pa.Super. 2003)).

The statutory presumption favoring an award of custody to parents over third-parties is not applicable to the current case because Paternal Grandparents seek only partial physical custody of Child. *See* 23 Pa.C.S.A. § 5327(b) (setting forth presumption in cases concerning primary physical custody). The Child Custody Act ("Act") provides:

**§ 5325. Standing for partial physical custody and supervised physical custody**

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file

- 5 -

an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1)  where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section[.]

23 Pa.C.S.A. § 5325(1).  The Act further provides:

**§ 5328.  Factors to consider when awarding custody**

**(a)  Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)  The parental duties performed by each party on behalf of the child.

(4)  The need for stability and continuity in the child's education, family life and community life.

(5)  The availability of extended family.

(6)  The child's sibling relationships.

(7)  The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)    Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

*    *    *

**(c)  Grandparents and great-grandparents.—**

(1)    In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i)    the amount of personal contact between the child and the party prior to the filing of the action;

> (ii)   whether the award interferes with any parent-child relationship; and
>
> (iii)   whether the award is in the best interest of the child.
>
> *   *   *

23 Pa.C.S.A. § 5328(a), (c)(1).  Thus, when deciding an award of custody, the court must conduct a thorough analysis of the best interests of the child based on the factors set forth in the Act.  **E.D. v. M.P.**, 33 A.3d 73 (Pa.Super. 2011).  "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). Nevertheless, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013).

Further, "in the recent past, grandparents have assumed increased roles in their grandchildren's lives and our cumulative experience demonstrates the many potential benefits of strong inter-generational ties." **Hiller, supra** at 360, 902 A.2d at 886.  Thus:

> While acknowledging the general benefits of these relationships, we cannot conclude that such a benefit always accrues in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent.  In contrast, however, **we**

> **refuse to close our minds to the possibility that in some instances a court may overturn even the decision of a fit parent to exclude a grandparent from a grandchild's life, especially where the grandparent's child is deceased and the grandparent relationship is longstanding and significant to the grandchild**.

*Id.* at 360, 904 A.2d at 886-87 (internal footnote omitted) (emphasis added). *See also Commonwealth ex. rel. Goodman v. Dratch*, 159 A.2d 70, 71 (Pa.Super. 1960) (stating: "Unless there [is] some compelling reason, we do not believe that a grandchild should be denied visitation to his grandparents"). Moreover, permitting partial physical custody of a child to grandparents upon the death of the child's parent does not violate the surviving parent's fundamental right to direct the care, custody, and control of the child. *See Hiller, supra* (affirming custody order that gave grandparents partial physical custody, including one week during summer vacation).

Additionally, in the context of custody proceedings, "[h]ostilities between the [parties] are relevant only insofar as they constitute a threat to the child or affect the child's welfare." *Nancy E.M. v. Kenneth D.M.*, 462 A.2d 1386, 1388 (Pa.Super. 1983). Importantly:

> A custodial parent's suspicion of or animosity towards another parent or third party seeking visitation should not alone warrant denial of visitation; otherwise the custodial parent could always effectively deny visitation simply by testifying to suspicion or animosity. Instead of deferring to suspicion or animosity, the hearing judge must try to determine whether there is any basis for these feelings. Stated more broadly, **the judge must appraise whether**

> **the relationship between the disputing parties has an adverse effect on the child**.

> \* \* \*

> Except under unusual circumstances, no child should be cut off entirely from one side of [her] family. [V]isits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with [her] grandparents which [she] cannot derive from any other relationship. If animosities continue between the parties, **and result in adverse [e]ffects on [the child]**…, a visitation order may be revised, even to the extent of retracting visitation.

*Commonwealth ex. rel. Williams v. Miller*, 385 A.2d 992, 995 (Pa.Super. 1978) (internal citations omitted) (emphasis added) (reversing trial court order denying maternal grandmother visitation with grandchild following mother's death; maternal grandmother offered sufficient reasons why visitation with child for one weekend each month would serve child's best interests; record did not support trial court's finding that maternal grandmother abandoned mother; father's "mistrust" of maternal grandmother was not valid reason for denying her visitation; trial court failed to provide sufficient consideration to unusual facts of case; and if enforcing visitation away from child's home presents harmful effects on child, then trial court may specify place and conditions of visitation).

Instantly, the trial court concluded:

> [Mother] first argues that the [c]ourt abused its discretion in failing to adequately address all custody factors. [Mother] states that the [c]ourt must address each of the listed sixteen (16) factors in 23 Pa.C.S.A. § 5328(a) in awarding any form of physical custody. While the [c]ourt

- 10 -

agrees that the court must **consider** all of the factors listed in § 5328(a) that are relevant, this [c]ourt does not agree that it must specifically address all sixteen factors in the [December 11, 2015[1]] Opinion. The statute provides: "In ordering any form of custody, the court shall determine the best interest of the child by **considering all relevant factors**, giving weighted consideration to those factors which affect the safety of the child…[.]" 23 Pa.C.S.A. § 5328(a) (emphasis added). The statute and judicial precedent require the court to consider the factors, but not to discuss each factor in detail in the [December 11, 2015] Opinion. [**See J.R.M., supra** at 653] (stating "all of the factors listed in section 5328(a) are required to be **considered** by the trial court"). This [c]ourt…briefly addressed the relevant factors in the [December 11, 2015] Opinion, in addition to discussing the factors listed in section 5328(c) in detail, with respect to grandparents seeking custody. By way of example, the hearing revealed no evidence by either party that [Child] has ever been abused. The [c]ourt did not consider that factor but, since it was not relevant to the [c]ourt's determination, it was not necessary to address it in the [December 11, 2015] Opinion. Likewise, the [c]ourt did not hear evidence as to sibling relationships, preference of the five year old [Child], attempts by any party to turn [Child] against another party, nor any history of drug and alcohol abuse by either of the parties.

[Mother] next argues that the [c]ourt abused its discretion by nominally awarding [Mother] sole legal custody, but effectively awarding [Paternal Grandparents] shared legal custody in the Order. This [c]ourt cannot agree with this accusation. The [December 11, 2015] Opinion and Order made clear that [Mother] is to have sole legal custody and shall have the exclusive right to make all major decisions affecting [Child]. However, [Mother] argues that by granting [Paternal Grandparents] the ability to travel with [Child], the court has effectively nullified [Mother's] sole legal custody. To support this contention, [Mother] relies

_____

[1] A copy of the court's December 11, 2015 custody order and opinion is attached for reference.

on a Superior Court case which discussed how legal custody affects travel decisions. *See M.P. v. M.P.*, 54 A.3d 950 (Pa.Super. 2012). This case is distinguishable from the facts at bar, though. In *M.P. v. M.P.*, a mother had sole legal custody of her child, and the father had visitation rights; the problem arose when the mother sought to take the child to Ecuador for a vacation and the father disagreed. *Id.* at 954. The court found that it was improper for the lower court to prohibit the mother from traveling to Ecuador with her child because she had sole legal custody, meaning she had the "final authority to make decisions regardless of whether the other parent agrees or disagrees." *Id.* [Mother] argues that, as discussed in *M.P. v. M.P.*, the current Order interferes with [Mother's] grant of sole legal custody. This reasoning stretches the holding of *M.P. v. M.P.* further than this [c]ourt is inclined to follow.

In the current Order, [Paternal Grandparents] are granted either seven consecutive days, or two sets of three consecutive days in the summer time, depending on the amount of travel required. In order to receive this time, [Paternal Grandparents] must notify [Mother] by March 15, of the days they desire to exercise custody and where they plan to travel to. [Paternal Grandparents] must also provide a means of communication between [Mother] and [Child] at all times when they are exercising custody of [Child]. Unlike the Order in *M.P. v. M.P.*, the Order here does not restrict [Mother's] ability to make travel plans with [Child]. Like all other major decisions that will affect [Child], [Mother] is permitted to take [Child] to any location that [Mother] pleases, and does not have to answer to [Paternal Grandparents] when doing so. The only restrictions placed on [Mother] are to comply with the Order. Furthermore, the present Order provides that [Mother] will have advanced notice of the dates and locations where [Paternal Grandparents] plan to travel to, if anywhere. And, [Mother] will always be provided with a means of contact with [Child]. This [c]ourt does not believe that this nullifies [Mother's] sole legal custody. [Mother] still has the right to make all major decisions affecting [Child] without taking into consideration [Paternal Grandparents'] opinions. Finally, by requiring [Paternal Grandparents] to reveal their travel plans no later than

March 15 of each year, [M]other has more than enough time to request relief from the [c]ourt if the parties cannot reach agreement on [Paternal Grandparents'] vacation plans.

[Mother] further argues that the [c]ourt erred in failing to comply with judicial precedent, namely [*Troxel, supra*] and [*Hiller, supra*]. [Mother] argues that the [c]ourt failed to give proper weight to the presumption that a fit parent will act in the best interest…her child. [*See Troxel, supra* at 69, 120 S.Ct. at 2062, 147 L.Ed.2d at ___]. The [c]ourt specifically found that [Mother] is a fit-parent and that the [c]ourt believes she will act in [Child's] best interest. However, as discussed at length in the [December 11, 2015] Opinion, [Mother] has allowed the bond with [Paternal Grandparents] to grow over the course of [Child's] life, and [Child] deserves to maintain that bond now that her father has passed. Because [Mother] is a fit-parent, this [c]ourt granted her sole legal custody and awarded [Paternal Grandparents] a maximum of thirty-one (31) overnight visits out of every three hundred and sixty-five (365) days. This [c]ourt specifically found that [Child] has had similar contact with [Paternal Grandparents] since her birth. This [c]ourt also found that pursuant to 23 Pa.C.S.A. § 5328(c)(2), this award does not interfere with the parent-child relationship, as [Mother] still maintains sole legal custody and will maintain primary physical custody of [Child] over ninety (90) percent of the time. The [c]ourt does not believe this counters the precedent established in *Troxel* or *Hiller*, but rather permits [Paternal Grandparents] to spend a limited amount of time with their grandchild, as they have done throughout [Child's] life.

[Mother] next argues that the [c]ourt erred in its consideration of [Mother's] encouragement of the grandparent-grandchild relationship. [Mother] alleges that choosing [Paternal Grandparents] as supervisors for Father's partial custody rights should not be a factor for the court to rely on in granting [Paternal Grandparents] custody. This [c]ourt disagrees. [Paternal Grandparents] have been trusted with the safe-keeping of [Child] for visitation throughout her life. As indicated in the [December 11, 2015] Opinion, there is no evidence to

- 13 -

suggest that either party poses a risk of harm to [Child's] well-being. Furthermore, [Paternal Grandparents] supervising the Father's custody is not the only reason this [c]ourt granted [Paternal Grandparents] custody rights. In fact, the [c]ourt noted that [Child's] relationship with [Paternal Grandparents] extended beyond a mere supervisory role between the Father and [Child]. [Child] has maintained a close relationship with [Paternal Grandparents] throughout her life, with and without the presence of her Father in [Paternal Grandparents'] home. [Child] continued visitation to [Paternal Grandparents'] home, with [M]other's consent, for periods when Father was incarcerated. The [c]ourt finds this to be an adequate reason to grant [Paternal Grandparents] partial custody rights pursuant to § 5328(c)(1), requiring the court to consider "the amount of personal contact between the child and the party prior to the filing of the action." 23 Pa.C.S.A. § 5328(c)[(1)(i)].

Finally, [Mother] argues that the [c]ourt erred in granting more extensive custody rights than had been established previously. Specifically, [Mother] argues that she has never consented to [Paternal Grandparents] taking extensive travel periods with [Child]. This [c]ourt knows of no authority, and [Mother] cites to no authority that requires a court deciding custody to grant only identical time to that which has been historically granted by [M]other. Rather…the "paramount concern [in child custody cases] is the best interest of the child." *McMillen v. McMillen*, 602 A.2d 845, [846] (Pa. 1992). After considering all of the testimony, this [c]ourt finds that the Order is in the best interests of [Child], which includes the grant of one seven-day, or two three-day vacations with [Paternal Grandparents] in the summer. Testimony at trial established that [Child] and [Mother] have vacationed with [Paternal Grandparents] in the past. Thus, because [Child] has enjoyed extensive time with [Paternal Grandparents] throughout her life, the [c]ourt finds the grant of vacation time will merely be a continuation of the already established relationship, and is not an abuse of the [c]ourt's discretion.

(Trial Court Rule 1925 Opinion, filed January 19, 2016, at 3-8) (emphasis in

original).  The record supports the court's conclusions.  Therefore, we affirm the court's order granting Paternal Grandparents partial physical custody of Child.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2016

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY,
PENNSYLVANIA
CIVIL DIVISION -- LAW

W. and J. M.,
      Plaintiffs

   vs.

    No. 10385 of 2015

R. B.,
      Defendant

## MEMORANDUM OPINION AND ORDER

McBRIDE, P.J.                                 December 11, 2015

This matter comes before the Court following Defendant's filing of Exceptions to the Proposed Order dated April 29, 2015. Hearing was held in this child custody case, over the period of two days, on October 14, 2015, and on December 3, 2015. After considering all of the evidence and testimony presented at hearing, this Court finds clear and convincing evidence that a grant of partial physical custody to the Plaintiffs as described in the following Order is in the best interest of the child and does not unduly infringe upon the Defendant-mother's fundamental right to parent her child as she sees fit.

The relevant procedural history of this case is as follows. Mother, R. B. e (now R. F. ), and father, B. M. (now deceased), are the parents of one minor child, A. M., age five, born on 2010. The Plaintiffs, W. and J. M. are the parents of B. M. :, and the paternal grandparents of the child. The mother and father were never married and the child has always been in the





mother's primary care. Prior to his death, the father had filed for, and received, partial custody rights to the child under a Temporary Order dated September 15, 2014. Under the Order, all of the partial custody rights the father received required supervision by the Plaintiff-grandmother, due to the father's drug addiction problems. Before any additional custody hearings took place, the father died on February 18, 2015. Following the untimely passing of their son, the Plaintiff-grandparents filed a Petition to Initiate Complaint for Grandparent's Rights on March 30, 2015. In response to the Petition, on April 29th, 2015, the Court entered a Proposed Order. In the Order, the Plaintiff-grandparents were granted partial custody rights and shared legal custody with the Defendant-mother. The Order granted the Plaintiff-grandparents custody of the child every third weekend from 6:00 p.m. Friday to 3:00 p.m. Sunday. Additionally, the Order allotted the Plaintiff-grandparents a period of five hours either one day before or one day after Thanksgiving, Christmas, and the minor's birthday; and four consecutive days with the minor during the summer months. It is to that Order which the Defendant-mother has filed Exceptions.

Specifically, the Defendant-mother objects to both the grant of shared legal custody with the Plaintiff-grandparents; and to the time, manner and conditions of the partial physical custody with the Plaintiff-grandparents. The Defendant-mother submits that the Court and Custody Hearing Officer erred in granting shared legal custody to the Grandparents. To this exception, the Court adamantly agrees. As the following Order reflects, the mother shall have sole legal custody of the child and has the exclusive right to make all major decisions affecting the minor, including, but not limited to medical, religious, and educational decisions. The Court agrees with the Defendant-mother's

position that the granting of shared legal custody was in error and unduly infringed on the mother's fundamental rights as a fit parent under the laws of the United States and Pennsylvania. *See e.g. Troxel v. Granville*, 530 U.S. 57 (2000); *Hiller v. Fausey*, 904 A.2d 875 (Pa. 2006). However, with regard to the rest of Defendant-mother's Exceptions, this Court cannot agree in whole, and finds that partial custody with the Plaintiff-grandparents is appropriate in this case.

The initial inquiry in third-party custody petitions is whether the party filing has standing. *See R.T. v. J.T.*, 2015 WL 6828144, at 7 (Pa. Super. Ct. 2015). The Plaintiff-grandparents initiated their petition after the passing of their son, the minor's father, asserting standing under 23 Pa.C.S.A. § 5325(1). The Plaintiff-grandparents also argued that standing was proper due to their significant contact with the child since her birth. The statute at issues provides "where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action." 23 Pa.C.S.A. § 5325(1). Defendant-mother filed no objections to the Plaintiff-grandparents' standing, and the statutory requirements have been met, thus standing is proper in this case.

When standing requirements are met, the Court must then consider all statutorily required factors. When discussing the factors pursuant to §5328(a), this Court finds that both parties are likely to encourage and permit frequent contact between the child and the other party; neither party presents a risk of harm to the child; both parties can and will provide for the child to have a stable educational, family and community life; and both parties can meet the child's emotional needs. The parties do not live far from one another, and the parties have historically shown their ability to cooperate with each other in

addressing the child's needs. For grandparents seeking partial physical custody, the statute provides:

**§5328.     Factors to Consider when Awarding Custody**

**(c) Grandparents and great-grandparents.—**

(1)     In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

    (i)     The amount of personal contact between the child and the party prior to the filing of the action;

    (ii)     Whether the award interferes with any parent-child relationship; and

    (iii)     Whether the award is in the best interest of the child.

23 Pa.C.S.A §5328(c)(1). Judicial precedent expands on this law and provides that where the matter concerns custody or visitation, the "paramount concern is the best interest of the child." _McMillen v. McMillen_, 602 A.2d 845, 846 (Pa. 1992). Moreover, "this is equally true in cases involving whether grandparent visitation rights should be awarded." _Norris v. Tearney_, 619 A.2d 339, 340 (Pa.Super. 1993). In determining what is in the child's best interest, the goal of the court is "to foster those relationships which will be meaningful for the child, while protecting the child from situations which would have a harmful effect." _Com. ex rel. Zaffarano v. Genaro_, 455 A.2d 1180, 1182 (Pa. 1983). The Court must consider the child's "physical, intellectual, emotional, and spiritual well-being" and perform a "child-centered analysis" when crafting its order.

_Douglas v. Wright_, 801 A.2d 586, 591 (Pa.Super. 2002).

At hearing, both parties presented testimony seeking to establish what they believed to be in the child's best interest. Addressing the three factors in order, this Court finds the best interest of the child is best served by awarding partial physical custody with the Plaintiff-grandparents as specified in the following Order.

Starting with the first factor, the Court finds the child has maintained a significant amount of personal contact with the Plaintiff-grandparents since her birth. Testimony and evidence from both parties shows that the child has maintained a close relationship with her paternal grandparents since the time of her birth. The parties dispute whether the child ever actually lived under the grandparents' roof during any point in her life, but they both agree that the child has stayed overnight in the grandparents' home on many occasions. In fact, the Defendant-mother agreed to allow the child's father to have custody visits on the condition that the Plaintiff-grandparents supervised all visits. Both parties agreed at that time that the grandparents could provide a safe and loving atmosphere for the child, while she spent time with her natural father. The child has a bedroom at the Plaintiff-grandparents' home, and testimony provides that the child maintains close ties with extended family who live near the Plaintiffs.

While this Court acknowledges that there were periods of time when the child had little-to-no contact with the Plaintiff-grandparents, those appeared to be isolated incidents that did not result from the grandparents' direct actions. Rather, when the child's father was alive, the mother distanced herself from him for short periods, which in turn, caused some gaps in visitation with the grandparents. At no time did the Plaintiff-grandparents go more than six months without seeing the child, though. However, both parties agree that even when the child did not see her father due to his incarceration, the child still

continued having some visitation with the Plaintiff-grandparents at the Defendant-mother's discretion. This supports the idea that the child's relationship with the grandparents extended beyond a mere supervisory role between the father and the child.

Moving to the second factor, this Court finds that this Order does not interfere with the parent-child relationship. The mother will maintain sole legal custody and have the right to make all major decisions in the child's life, including school, medical and religious decisions. The mother will also maintain the right to determine which extracurricular activities the child participates in, and the grandparents will cooperate fully with those choices when the child is in their custody. Further, the Order provides a maximum of thirty-one (31) overnight visits with the Plaintiff-grandparents out of every three hundred and sixty-five (365) days. This Court finds that the Plaintiff-grandparents have enjoyed similar contact with the child since her birth and this does not interfere with the child's relationship with her mother. The testimony at hearing from both parties supports this finding, as both parties agreed that the child has stayed overnight with her grandparents on occasion throughout the span of her life.

Finally, this Court finds that this Order is in the best interests of the child. Testimony at hearing showed that Defendant-mother is, and has always been, a fit parent who looks out for the best interest of her child. This has been shown by the mother permitting the child to see her father, when he was alive, despite his drug addiction. The mother recognized the importance of the child's relationship with her father and allowed the child's relationship with her father to foster, so long as he was under the supervision of the Plaintiff-grandparents. Mother's actions operate as a double-edged sword. They prove, on the one hand, that the mother is a fit parent who always looks out for the best

interest and safety of her child, but on the other hand, they are also proof of the bond that has developed over the last five years between the child and the Plaintiff-grandparents. The child is important in her grandparents' lives, and they are important in her life, perhaps even more so now that the child's father has passed.

While this Court has no doubt that the Defendant-mother will permit contact between Plaintiff-grandparents and the child, this Court also has no doubt that the Plaintiffs were acting out of nothing but concern for their relationship with their grandchild when they filed their petition within two months of their son passing. Neither party established that the other party posed a risk of harm to the child's well-being. Likewise, neither party's credibility is at issue in this case. All of this evidence together leads this Court to the conclusion that the best interest of the child in this case is to maintain partial custody with the Plaintiff-grandparents as outlined in the Order. It is this Court's prayer that these parties re-establish their former good relationship for the child's benefit.

In summary, this Court makes the following specific findings:

(1) The child has maintained a close, personal relationship with her paternal grandparents from the time of her birth until the present.

(2) This award does not unduly infringe upon the mother's fundamental right to parent her child as she sees fit. The child will spend a limited time with her grandparents, as she has experience previously in her life.

(3) This award is in the best interest of the child. While the mother is a fit parent, the mother has allowed this bond to grow with the grandparents during the

child's life, and the child deserves to maintain that bond now that her father has passed.

After review of the evidence and testimony presented at hearing, this Court finds that the Proposed Order is in the minor's best interest. Therefore, it is hereby ORDERED and DIRECTED as follows.

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
PENNSYLVANIA
CIVIL DIVISION -- LAW



W. and J. M.,
            Plaintiffs

            vs.

R. B.,
            Defendant

No. 10385 of 2015

## ORDER

McBRIDE, P.J.                           December 11, 2015

AND NOW, to wit, in accordance with the foregoing Opinion, IT IS HEREBY ORDERED AND DIRECTED as follows:

I.     CUSTODY:

A.     Physical custody of the minor, A. M., shall be granted to the mother, R. B. (R. F.) with partial custody rights vested in the paternal grandparents, W. and J. M.; according to the following schedule and conditions.

B.     The mother shall have sole legal custody, which shall include the right to make major decisions affecting the best interests of the child, including, but not limited to medical, religious and educational decisions.

II.     SHARED CUSTODY:

A.     WEEKENDS AND WEEKDAYS:

i.     Beginning Friday, December 18, 2015, and the third weekend of every month thereafter, the paternal grandparents shall be granted partial custody of the minor from 6:00 p.m. Friday to 3:00 p.m. Sunday. The third weekend shall be determined by the third Friday of each month Transportation of the minor shall be shared by the parties in that the person beginning their/her custody period shall retrieve the minor from the other party.

ii.     The paternal grandparents are granted additional time as agreed upon by the parties acting in the best interest of the minor.

iii.     If during their periods of partial custody paternal grandparents will require the services of a babysitter, they are to return the child to Mother's care, after notifying her of their conflicting schedule.

### B.     HOLIDAYS

i.     The paternal grandparents shall be granted partial custody of the minor either one day before or one day after the holiday of Thanksgiving, Christmas, and the minor's birthday for a period of five hours. Exact days and times shall be agreed upon by the parties acting in the best interest of the minor. Transportation of the minor shall be shared by the parties in that the person beginning their/her custody period shall retrieve the minor from the other party.

ALL HOLIDAY PARTIAL CUSTODY RIGHTS SHALL SUPERSEDE ANY OTHER PARTIAL CUSTODY RIGHTS HEREIN GRANTED.

### C.     SUMMER AND/OR SCHOOL VACATION:

i.     Beginning in the summer of 2016, the paternal grandparents are granted seven consecutive days of partial custody with the minor during the summer months (June, July, and August). In order to receive the grant of seven consecutive days, the following conditions must be complied with:

1) The paternal grandparents must have plans at a location requiring substantial travel (for example, Disney, the beach, out-of-state locations, etc.).

2) The paternal grandparents shall notify the mother by March 15 of the exact seven days they desire to exercise custody and where they plan to travel to.

3) The paternal grandparents must provide a means of communication between the mother and the child at all times.

4) The vacation is not to be combined with the third weekend of any month.

ii.     If the paternal grandparents do not plan a trip that requires substantial travel arrangements, they shall receive two separate, three consecutive days of partial custody with the minor during the summer months (June, July, and August). The two three-day vacations must meet the following conditions:

1) The paternal grandparents shall notify the mother by March 15 of both of the exact sets of three-days they desire to exercise custody and where they plan to travel to, if anywhere.

2) The paternal grandparents must provide a means of communication between the mother and the child at all times.

3) The vacations are not to be combined with the third weekend of any month.

iii. The paternal grandparents may exercise either option (i) or option (ii) for vacation, but may not exercise both.

## III.     SPECIAL INSTRUCTIONS AND CONDITIONS:

A.     When the child is in the custody of the paternal grandparents, they shall ensure the minor's attendance in all extra-curricular activities as decided by mother.

B.     The paternal grandparents must provide a means of communication between the mother and child at all times when she is in their care.

C.     The paternal grandparents shall notify the mother immediately of any event or activity that could reasonably be expected to be a significant concern to the mother.

D.     If any party seeks to relocate from their/her current residence, that party shall follow the procedures set forth at 23 Pa. C.S.A. § 5337 prior the relocation.

E.     The rules listed in the Appendix to this Order are to be followed by all the parties as part of this Order.

BY THE COURT,

_____
JOHN D. MCBRIDE, P.J.
PRESIDENT JUDGE

BEAVER COUNTY, PA
PROTHONOTARY
NANCY WERME

2015 DEC 11 PM 12:43

FILED OR ISS