J-A26043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.G. & R.C., JR. | : | No. 792 WDA 2019 |

Appeal from the Order Entered April 30, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD 18-7134-017

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.: **FILED APRIL 02, 2020**

A.M., parental grandmother ("PGM"), appeals from the order dated April 26, 2019 and entered on April 30, 2019,[1] in the Court of Common Pleas of Allegheny County, dismissing her cross-exceptions to the Report and Recommendation and Proposed Order of Court of the Partial Custody Hearing Officer ("HO Report").[2] The order terminated a February 2, 2018 trial court

---

[1] The subject order was dated August 26, 2019. However, notice pursuant to Pa.R.C.P. 236(b) was not provided until August 30, 2019. Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999).

[2] The HO Report was dated October 4, 2018 and was filed on October 5, 2018. We shall refer to the report by its filing date.

order awarding PGM interim partial physical custody of her grandchildren, D.C., a male, born in October 2016, and I.G., a female, born in February 2018,[3] (collectively, the "Children"), after the death of the Children's natural father, A.C. ("Father"), in November 2017.  The order also placed PGM's future visits with the Children in the sole discretion of N.G. ("Mother").  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows.

> [N.G. (or "Mother")] is the biological mother of two minor children, D.C. and I.G.  [Father] died by suicide [in November 2017]. Although Mother and Father never married, they were engaged to be married and were living together prior to Father's death.  [PGM] is the biological paternal grandmother of the minor children. [R.C., Jr., (or "PGF")] is the biological paternal grandfather of the minor children.
>
> PGM filed her complaint for partial custody of D.C. on January 22, 2018, and PGF filed his petition for partial custody of D.C. on January 31, 2018.  Both PGM and PGF alleged in their petitions that prior to Father's death they enjoyed [] close relationship[s] with D.C. and often provided childcare for him.  Both PGM and PGF alleged that[,] following Father's death[,] Mother began restricting their contact with D.C.  The petitions were consolidated and then later amended to include I.G., who was born after Father's death, despite neither PGM nor PGF having ever met her.
>
> On February 2, 2018, PGM presented a petition for special relief, in which she requested interim partial physical custody of D.C. Mother presented a preliminary response in which she opposed PGM's request and asked that it be denied.  By order of court dated February 2, 2018, [the trial court] granted PGM interim partial physical custody of D.C. on the first Saturday of every month from 10[:00] a.m. to 4[:00] p.m.

_____

[3] **_See_** N.T., 9/24/18, at 6.

Shortly thereafter, PGF filed his own petition for interim custody. Mother filed a response and new matter[,] in which she expressed concerns regarding PGF's mental health history and stated that[,] at all times before and after Father's death[,] PGF's contact with D.C. was always supervised. By order of court dated April 2, 2018, [the trial court] denied PGF's request for interim partial physical custody and granted Mother's request that the parties proceed through the [trial court's] Generations program.

After the parties' unsuccessful mediation, the case was assigned to the partial custody hearing officer [("HO")], Laura Valles, and a hearing was scheduled for July 26, 2018. By order of court dated July 31, 2018, two additional days of testimony were scheduled for August 27, 2018, and September 24, 2018. After the conclusion of all three days of contentious litigation, HO Valles issued her Report on October 4, 2018, in which she recommended that both PGM's and PGF's requests for court-ordered visitation be denied and that future visits be in Mother's sole discretion, and that the February [2], 2018 order of court granting PGM interim partial physical custody be terminated.

All parties filed exceptions to HO Valles' Report.[1] Specifically, PGM identified three exceptions to HO Valles' Report. First, PGM claimed HO Valles erred/abused her discretion in recommending [the trial court's] February [2], 2018 Order of Court granting her interim partial physical custody be terminated. Second, PGM claimed HO Valles erred/abused her discretion in mandating that all future contact with the [C]hildren be at Mother's sole discretion. And[,] third, PGM claimed HO Valles erred/abused her discretion by failing to grant PGM with [sic] her requested court-ordered visitation.

After several consent orders to continue the matter, the argument on exceptions was heard by [the trial court] on March 13, 2019.

_____

[1] PGF filed exceptions on October 22, 2018; PGM filed cross-exceptions on October 23, 2018; and Mother filed cross-exceptions on October 25, 2018.

Trial Court Opinion, 6/17/19, at 1-3 (certain capitalization omitted; footnote added).

In an order dated April 26, 2019, and entered on April 30, 2019, the trial court dismissed all parties' exceptions. On May 28, 2019, PGM timely filed her notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her brief on appeal, PGM raises the following issues:

I. Did the [trial] court err as a matter of law and commit an abuse of discretion in denying [PGM's] Exceptions to the [HO's] Report, Recommendation, and Proposed Order dated October 4, 2018[,] as the [HO] committed an abuse of discretion and erred as a matter of law in the application of the custody factors enumerated at 23 Pa.C.S.A. § 5328(a)[,] when the [HO] denied contact between [PGM] and her grandchildren, despite evidence showing that an award of custody would not interfere with the parent/child relationship[,] and that the continuation of [PGM's] relationship would be in the [Children's] best interests, given that standing was conferred pursuant to 23 Pa.C.S.A. § 5325(1)?

II. Did the [trial] court err as a matter of law and commit an abuse of discretion in denying [PGM's] exceptions to the [HO's] Report, Recommendation, and Proposed Order dated October 4, 2018[,] which denied [PGM's] request for partial custody[,] despite settled caselaw [*sic*] and Pennsylvania's strong public policy commitment to ensuring that relationships between extended family and children continue, despite the death of a biological parent?

III. Did the lower court err as a matter of law and commit an abuse of discretion in denying [PGM's] exceptions to the [HO's] Report, Recommendation, and Proposed Order dated October 4, 2018[,] as the [HO] failed to address the custody factors as proscribed at 23 Pa.C.S.A. § 5328(c)?

IV. Did the lower court err as a matter of law and commit an abuse of discretion in denying [PGM's] exceptions to the [HO's] Report, Recommendation, and Proposed Order dated October 4, 2018[,] as the [HO] improperly considered videos not submitted as evidence[,] and utilized the same in her analysis of 23 Pa.C.S.A. § 5328(a)(7)?

J-A26043-19

PGM's Brief at 3-4.[4]

    In her brief on appeal, PGM argues:

> The [r]ecord indicates, not only by a preponderance of evidence,
> but by clear and convincing evidence, that it is in the best interests
> of the minor children to continue to have a relationship with
> [PGM], and[,] by extension, the rest of Father's extended family.
> Given that standing to pursue this matter was conferred pursuant
> to 23 Pa.C.S.A. § 5325(1), any contrary decision, given the facts
> presented, goes against settled [case law] and Pennsylvania's
> strong public policy commitment to ensuring that relationships
> between extended family and children continue, despite the death
> of a biological parent.  The [trial] court's reliance on inapplicable
> [case law] and its failure to acknowledge Pennsylvania [statutory]
> and [case law] permitting these awards of custody is a
> misapplication of the law.
>
> The [trial] court further erred as a matter of law and committed
> an abuse of discretion in denying [PGM's] exceptions to the [HO's]
> Report of October 5, 2018 since] the [HO] committed an abuse of
> discretion and erred as a matter of law in the application of the
> custody factors enumerated at 23 Pa.C.S.A. § 5328(a)[,] when
> the [HO] denied contact between [PGM] and her grandchildren.

---

[4] In her concise statement and her statement of questions involved in her
brief, PGM challenged the HO's consideration of videos not admitted into
evidence as part of the custody assessment under 23 Pa.C.S.A. § 5328(a)(7).
PGM, however, did not include a separate section regarding this issue in her
brief.  Thus, we find PGM's fourth issue waived.  ***See In re W.H.***, 25 A.3d
330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide
any discussion of a claim with citation to relevant authority or fails to develop
the issue in any other meaningful fashion capable of review, that claim is
waived.").  Nevertheless, to the extent that Mother discusses the video issue
within her discussion of section 5328(a)(7), we find that PGM's challenge lacks
merit.  First, the trial court did not consider the videos in its opinion.  Second,
the HO credited Mother's testimony in which she reported that D.C. began
banging his head against the wall after he returned from a visit with PGM and
that D.C. never exhibited this behavior prior to the court-ordered visits with
PGM.  As such, the videos are not essential to an assessment of the factors
pertaining to section 5328(a)(7).

The [HO] failed to attribute any weight to the amount of contact that [PGM] had with D.C. prior to Father's death[,] and instead placed unwarranted credence on Mother's unsubstantiated concerns regarding what [PGM] may possibly say to the [C]hildren concerning Father's death.

The [HO] also made a factual determination that [PGM] failed to follow Mother's directives as to the care and control of D.C. during the visits[;] however, this goes against the weight of the evidence. Mother herself admitted that [PGM] historically followed her directives as it related to D.C's care. In light of the totality of the record, this is certainly an unreasonable finding.

Lastly, in her consideration of the custody factor found at 23 Pa.C.S.A. § 5328(a)(7), the [HO] improperly considered videos not submitted as evidence and utilized the same in her analysis of 23 Pa.C.S.A. § 5328(a)(7).

The [trial] court erred as a matter of law and committed an abuse of discretion in denying [PGM's] exceptions to the [HO's] Report, Recommendation, and Proposed Order dated October 4, 2018[,] as the [HO] failed to address the custody factors as [prescribed] at 23 Pa.C.S.A. § 5328(c). Nonetheless, [PGM] met her burden pursuant to these factors. [PGM] established consistent contact with D.C. prior to Father's death, established that her contact with both D.C[.] and I.G. would not interfere with Mother's ability to parent the children, and further established that maintaining her relationship [with] D.C. would be in his best interests. A failure to maintain the relationship between D.C. and paternal family members, as well the inability for I.G. to develop the same, will result in a secondary loss to both children. Neither will have the ability to truly know their father, in a manner that only paternal family members can provide.

[PGM asks] this Honorable Court to [vacate] the April [30], 2019 final order of court and sustain her exceptions to the [HO's October 5, 2018 report], so as to allow her a relationship with her grandchildren. [PGM further asks] this Honorable Court to follow longstanding settled [case law] and Pennsylvania's strong public policy commitment to ensuring that relationships between extended family and children continue, despite the death of a biological parent.

Specifically, [PGM] would pray for an order permitting her partial custody periods with her grandchildren, once per week for six (6) hours per visit. Alternatively, this Honorable Court can [remand] the matter to the [trial court] in order to determine an appropriate physical custody schedule.

PGM's Brief at 15-19 (certain capitalization omitted).

In custody cases under the Child Custody Act (the "Act"), our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting* *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted). With any custody case decided under the Act, the paramount concern is the best interests of the child. **See** 23 Pa.C.S. §§ 5328, 5338.

In **K.W. v. S.L.**, 157 A.3d 498 (Pa. Super. 2017), this Court stated as follows:

> "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **Rellick-Smith v. Rellick**, 147 A.3d 897, 901 (Pa. Super. 2016)[, *quoting* **Johnson v. American Standard**, 8 A.3d 318, 326 (Pa. 2010)].
>
> Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which

apply primarily to grandparents and great-grandparents. *See* 23 Pa.C.S.A. § 5324(3); 23 Pa.C.S.A. § 5325.

*K.W.*, 157 A.3d at 504.

Section 5324 of the Act provides:

**5324. Standing for any form of physical custody or legal custody**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands in *loco parentis* to the child.

(3) A grandparent of the child who is not in *loco parentis* to the child. . . .

\* \* \*

23 Pa.C.S.A § 5324.

Section 5325 of the Act provides:

**§ 5325. Standing for partial physical custody and supervised physical custody**

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section.

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section; or

(3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5325.

Section 5328(a) sets forth the best interest factors that the trial court considers in the context of child custody litigation. *See E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Further, we have explained as follows:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)[.]

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted).

Section 5328(a) of the Act provides as follows.

## § 5328.  Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Section 5328(c) provides as follows with regard to grandparents and great-grandparents:

**(c) Grandparents and great-grandparents.-**

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody

and supervised physical custody), the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent–child relationship; and

(iii) whether the award is in the best interest of the child.

* * *

23 Pa.C.S. § 5328(c)(1).

In her report and recommendation, the HO found the following with regard to section 5328(a):

This Hearing Officer considered all of the factors set forth in [23 Pa.C.S.A. § 5328(a)] and [its determinations] are as follows:

**1. WHICH PARTY IS MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT AND CONTINUING CONTACT BETWEEN THE CHILD AND ANOTHER PARTY?**

Pursuant to Mother's testimony [concerning] the past relationship between [PGM] and Father[,] and the various hostile situations Mother witnessed between Father and [PGM], Mother and Father began limiting [PGM's] exposure to the child, [D.C.]. Prior to Father's death, Mother and Father were in agreement to limit [PGM's] time with [D.C.]. In fact, Mother and Father did not visit [PGM] on the baby's first Christmas in 2017[,] as evidenced by a text sent to Father from [PGM]. Numerous exhibits were presented indicating texts from [PGM] requesting time with her grandson and asking both Father and Mother why they were ignoring her, avoiding her, blocking her calls, and severing her contact with her grandson.

Mother is very concerned and fearful that [PGM] and [PGF] will say inappropriate things to the [C]hildren regarding [F]ather's death. Mother is sincerely convinced Paternal Grandparents blame her for Father's suicide. Mother presented texts to support this belief as set forth in "Exhibit L". As a result, Mother believes

the [C]hildren's relationship with the Paternal Grandparents should be on her terms and at her discretion.

## 2. THE PRESENT AND PAST ABUSE COMMITTED BY EITHER PARTY OR MEMBER OF THE PARTY'S HOUSEHOLD.

No testimony was given regarding Mother's present or past abuse regarding Mother's actions. However, Mother credibly testified she witnessed, on many occasions, the verbal abuse directed to Father by [PGM]. Mother is very fearful [PGM] will act in the same manner toward the [C]hildren. Mother presented this court with numerous texts indicating the abusive tone and anger toward Father from [PGM].

## 3. THE PARENTAL DUTIES PERFORMED BY EACH PARTY ON BEHALF OF THE CHILD.

As [of] the date of the hearing, Mother has performed all parental duties on behalf of the [C]hildren. Prior to [PGM's] first court[-]ordered visit with [D.C.] in February of 2018, Mother emailed [PGM] an extensive list of instructions and directives for her to follow during her visit. [PGM's] response, which was set forth in "Exhibit M", replies to Mother that she has raised three sons and is currently raising her grandson, [K.], and has numerous visits with her granddaughters[,] and[,] as such[,] she can handle a six[-]hour visit without much trouble. She further replies to Mother that she does not know how "his strict nap by two p[.]m." would work out. Further, [PGM] instructs Mother that [D.C.] will call her husband [P.] "PapPap"[,] against Mother's request for [D.C.] not to.

Mother credibly testified [PGM] does not inform Mother of anything that takes place during her court[-]ordered visits. Further, the [trial court] denied [PGF's] request for visitation in [motions court]. Despite an [o]rder that denie[d PGF] visits, [PGM] allowed [PGF] to be present during her court-ordered visits. Mother has absolutely no confidence that [PGM] or [PGF] will follow her directions as evidenced by their behavior so far. [PGM's] and [PGF's disregard for] Mother's directives directly interferes with Mother's parental control of the [C]hildren.

## 4. THE NEED FOR STABILITY AND CONTINUITY IN THE CHILD'S EDUCATION, FAMILY LIFE, AND COMMUNITY LIFE.

It is not questioned that Mother is able to provide stability and continuity in the [C]hildren's education, family life, and community life. Each and every time Paternal Grandparents do not follow Mother's instructions and interfere with her parental rule with the [C]hildren, the [C]hildren will not have stability and continuity in their lives.

**5. THE AVAILABILITY OF EXTENDED FAMILY.**

All parties have extended family.

**6. THE CHILD'S SIBILING'S RELATIONSHIPS.**

As of the date of this hearing, [the Children] are the only siblings.

**7. WELL-REASONED PREFERENCE OF THE CHILD, BASED ON THE CHILD'S MATURITY AND JUDGMENT.**

Both children are very young. Neither was present in the courtroom. However, th[e HO] was shown two separate videos in which [D.C] is outside with Mother or with Maternal Grandfather in the front yard. As soon as [PGM] pulls up to the driveway and gets out of her van, the child instantly starts to cry and runs in the opposite direction of [PGM]. Mother also credibly testified that [D.C.] began banging his head against the wall after he returned from a visit with [PGM]. Mother credibly testified the child did not exhibit this behavior prior to the court[-]ordered visits.

**8. THE ATTEMPTS OF A PARENT TO TURN THE CHILD AGAINST THE OTHER PARENT, EXCEPT IN CASE OF DOMESTIC VIOLENCE WHERE REASONABLE SAFETY MEASURES ARE NECESSARY TO PROTECT THE CHILD FROM HARM.**

Mother whole heartedly believes [PGM] and [PGF] will attempt to turn her children against her by not following her directives and by telling them inappropriate things about Mother's relationship to Father regarding his suicide.

**9. WHICH PARTY IS MORE LIKELY TO MAINTAIN A LOVING, STABLE, CONSISTENT AND NURTURING RELATIONSHIP WITH THE CHILD ADEQUATE FOR THE CHILD'S EMOTIONAL NEEDS.**

After hearing all testimony, until the issues between Paternal Grandparents and Mother are resolved in an amicable manner, the hostility and animosity between the parties will continue. This animosity and hostility will not cultivate a loving, stable, consistent and nurturing environment adequate for the [C]hildren's emotional needs.

**10. WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL AND SPECIAL NEEDS OF THE CHILD.**

Mother has been the primary caretaker and has attended to the daily physical, emotional, developmental, educational and any special needs of each child since their birth.

Due to Paternal Grandparent's [sic] past behaviors, it is unlikely that the Paternal Grandparents will attend to the daily physical, emotional, developmental, educational and special needs of the [C]hildren while following Mother's directives for the same.

**11. THE PROXIMITY OF THE RESIDENCES OF THE PARTIES.**

[PGM] lives approximately ten minutes from Mother. [PGF] lives approximately forty minutes from Mother.

**12. EACH PARTY'S AVAILABILITY TO CARE FOR THE CHILD OR ABILITY TO MAKE APPROPRIATE CHILD-CARE ARRANGEMENTS.**

Since birth, Mother has shown her ability to care for the [C]hildren and the ability to make appropriate childcare arrangements. [PGM] and [PGF] may have the availability to care for the [C]hildren[,] but[,] due to past behavior[,] have not shown their ability to care for the [C]hildren while adhering to Mother's directives.

**13. THE LEVEL OF CONFLICT BETWEEN THE PARTIES AND THE WILLINGNESS AND ABILITY OF THE PARTIES TO COOPERATE WITH ONE ANOTHER. A PARTY'S EFFORT TO PROTECT A CHILD FROM ABUSE BY ANOTHER PARTY IS NOT EVIDENCE OF UNWILLINGNESS OR INABILITY TO COOPERATE WITH THAT PARTY.**

At the current time, there is an extremely high level of conflict between the parties. Mother is clearly concerned with Paternal Grandparents' refusal to follow her directives regarding her own children. Mother is extremely concerned Paternal Grandparents will reveal to the [C]hildren their own version of Father's suicide and their belief Mother was the cause. Mother credibly testified she does not trust Paternal Grandparents. Mother also credibly testified she witnessed the verbal abuse between [PGM] and Father[,] and her unwillingness to have the [C]hildren around [PGM] is an effort to protect them.

## 14. THE HISTORY OF DRUG OR ALCOHOL ABUSE OF A PARTY OR MEMBER OF A PARTY'S HOUSEHOLD.

During [PGM's] and [PGF's] testimony, both tried to implicate that Mother had a history of drug use. Mother vehemently denies the same.

## 15. THE MENTAL AND PHYSICAL CONDITION OF A PARTY OR MEMBER OF A PARTY'S HOUSEHOLD.

[PGF's] mental health status was discussed by Dr. Prabir K. Mullick, M.D.[,] who has been treating [PGF] since August 16, 1999.

## 16. ANY OTHER RELEVANT FACTOR.

N/A

Hearing Officer's Report and Recommendation and Proposed Order of Court, 10/5/18, at 3-7.

The HO's proposed order provided:

## ORDER OF COURT – CUSTODY

* * *

1. Mother shall continue to have sole legal and primary physical custody of [the Children].

2. [PGF's] request for a court[-]ordered visitation schedule with the minor children is hereby denied. Should[,] at any time Mother

determine[] it is in the best interest of the [C]hildren to begin a relationship with [PGF], Mother shall have sole discretion with regard to visitation schedule between the minor children and [PGF].

3. The February 3, 2018 Interim, Order of Court is hereby terminated.

[PGM] shall not be entitled to any court[-]ordered visitation schedule with the minor children. Should[,] at any time, Mother determine[] it is appropriate for the children to visit with [PGM], Mother shall have sole discretion to make said arrangements.

Hearing Officer's Proposed Order of Court, 10/5/18, at 2.

As noted by the trial court, *supra*, PGM's three exceptions were:

a. The Hearing Officer erred and/or committed an abuse of discretion in vacating Judge Satler's Interim Order of Court dated February 2, 2018.

b. The Hearing Officer erred and/or committed an abuse of discretion in mandating that any contact between the [C]hildren and [PGM] would be at Mother's discretion.

c. The [HO] erred and/or committed an abuse of discretion in failing to grant [PGM] court[-]ordered custody periods with her grandchildren.

PGM's Cross-Exceptions, 10/23/18, at 2.

We begin with PGM's first and third issues on appeal, in which PGM argues that the trial court erred as a matter of law and abused its discretion with regard to its consideration of section 5328(a)(1) and in failing to consider the factors set forth in section 5328(c).

Regarding the first issue, we conclude that HO Valles considered each of the statutory factors and made the determination that an award of partial physical custody to PGM was not in the best interest of the Children. Within

her discussion of the section 5328(a)(1) factors, the HO also considered the section 5328(c)(1) factors, without specifically enumerating them. We find the HO's consideration of the factors under section 5328(a)(1) is not unreasonable as shown by the evidence of record. *C.R.F.*, 45 A.3d at 443.

Further, with regard to PGM's challenge to the HO's failure to analyze the factors under 23 Pa.C.S. § 5328(c) (factors pertinent to assessing custody claims advanced by grandparents), the trial court stated as follows:

> First and foremost, [the trial court] did not address the issue of HO Valles' error/abuse of discretion in failing to analyze the custody factors set forth in 23 Pa.C.S.A. § 5328(c), identified above as issue #3, because that issue was waived by PGM. Pursuant to Pa.R.C.P. Rule 1915.4-2(b)(4), "[w]ithin twenty days after the date of the hearing officer's report . . . any party may file exceptions. . . . Matters not covered by exceptions are deemed waived unless . . . leave is granted."
>
> The issue of HO Valles' failure to address the custody factors set forth in Section 5328(c) was not included in PGM's exceptions. It was not until PGM filed her brief in support of her exceptions that she first raised the issue of HO Valles' failure to address the custody factors set forth in Section 5328(c). Because PGM failed to raise the issue at the time of filing her exceptions, and because she did not seek leave of court to file additional exceptions, [the trial court] considered the issue to have been waived and, thus, did not address it.

Trial Court Opinion, 6/17/19, at 6 (certain capitalization omitted).

For the reasons stated by the trial court, we agree with the trial court that PGM waived the challenge to the HO's failure to consider section 5328(c) as an issue for our review. Nevertheless, recognizing that PGM had standing under section 5325(1), the trial court did consider the section 5328(c)(1) factors, specifically, the amount of personal contact between the Children and

PGM prior to the filing of the action; whether the award of partial physical custody would interfere with any parent-child relationship; and whether the award was in Children's best interest. The trial court ruled against PGM on these factors, as set forth, *supra*. The trial court, through adopting the HO's findings, determined that, although there had been contact between PGM and D.C. prior to Father's death, Mother and Father had begun to withhold contact between D.C. and PGM prior to Father's death. Father and Mother were ignoring PGM, avoiding her, blocking her calls, and severing her contact with D.C. The trial court also found that there was a tumultuous relationship between Father and PGM, and that PGM had been verbally abusive toward Father. Further, as I.G. was not born until after Father's death, PGM had never had any contact with her.

Moreover, the trial court found that the award of partial physical custody to PGM would interfere with Mother's parent-child relationship with the Children. Mother credibly feared that PGM would allow PGF to have contact with the Children, as she had done in the past, although PGF did not have an order allowing him to have contact with the Children. The trial court also determined that Mother's fears that PGM would interfere with her wishes as to how to care for and raise the Children were credible, as PGM had previously disregarded Mother's child care instructions in the past. Further, the trial court found that PGM had not been forthcoming with Mother about her activities with D.C. while D.C. was in PGM's care. Additionally, the trial court

determined that Mother possessed credible fears that PGM and/or PGF, if given contact with the Children unsupervised by Mother, would influence the Children to believe that Mother caused Father's suicide. The trial court acknowledged that Mother offered PGM visits with D.C. in public settings, but PGM refused the offers.

Based on the animosity between Mother and PGM and the high level of conflict between the parties, the trial court determined that it would not be in the best interest of the Children for the trial court to award partial physical custody to PGM, but only such partial physical custody as Mother was willing to provide, at Mother's discretion.

We conclude that the trial court's discussion and conclusions regarding the section 5328(a)(1) factors (that contained the section 5328(c)(1) factors) was not unreasonable as shown by the evidence of record. **C.R.F.**, 45 A.3d at 443.

Nevertheless, separate and apart from the consideration of the section 5328(a)(1) and (c) factors, and the evidence with regard to those factors, the trial court refused to afford PGM her requested relief on the basis that the court would not interfere with the established case law regarding the award of partial physical custody to a grandparent when there is a fit and capable parent who is alive. The trial court reviewed PGM's first, second, and fourth issues (**see supra** at 4) together, stating as follows.

> Second, [the trial court] did not address issues #1, #2, and #4 set forth above because it concluded that court-ordered visitation

would be an unconstitutional infringement on Mother's fundamental right to make decisions concerning the care, custody, and control of her children. "Parents have a fundamental liberty interest in raising their children as they see fit." *D.P. v. G.J.P.*, 146 A.3d 204, 206 (Pa. 2016), *quoting* **Troxel v. Granville**, 530 U.S. 57, 65 (2000) (plurality). "[A]bsent factors such as abuse, neglect, or abandonment, the law presumes parents are fit and, as such, that their parenting decisions are made in their children's best interests." *D.P.*, 146 A.3d at 214. "[W]here there is no reason to believe presumptively fit parents are not acting in their children's best interests, the government's interest in allowing a third party to supplant their decisions is diminished." *Id.* at 214.

In this case, there was no allegation that Mother was anything but a fit parent. In fact, PGM testified on cross-examination that she believed Mother to be a fit parent. **See** [N.T., 8/27/18, at 167]. There were also no allegations made, and "[n]o testimony was given[,] regarding Mother's present or past abuse" of the [C]hildren. HO Report, 10/5/18, at 3.

Furthermore, after hearing all of the testimony and considering all of the evidence, HO Valles found that Mother "has performed all parental duties on behalf of the child,". . . "is able to provide stability and continuity in the [C]hildren's education, family life, and community life,". . . "has been the primary caretaker and has attended to the daily physical, emotional, developmental, educational and any special needs of each child since their birth," . . . and "has shown her ability to care for the [C]hildren and the ability to make appropriate childcare arrangements." *Id.* at 4-6.

In short, there was nothing in the record to [suggest] that Mother was anything but a fit parent. As such, "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." **Troxel**, 530 U.S. at 70. Moreover, "whenever a custody dispute arises between the parents and a third party, the evidentiary scale is tipped, and tipped hard, to the parents' side." *D.P.*, 146 A.3d at 212. On that issue, HO Valles' Report is instructive:

> Pursuant to Mother's testimony considering the past relationship between [PGM] and Father and the various hostile situations Mother witnessed between Father and

> [PGM], Mother and Father began limiting [PGM's] exposure to the child, [D.C.]. Prior to Father's death, Mother and Father were in agreement to limit [PGM's] time with [D.C.]. In fact, Mother and Father did not visit [PGM] on the baby's first Christmas in 2017[,] as evidenced by a text sent to Father from [PGM]. Numerous exhibits were presented indicating texts from [PGM] requesting time with her grandson and asking both Father and Mother why they were ignoring her, avoiding her, blocking her calls, and severing her contact with her grandson.

HO Report, 8/5/18, at 3.

Thus, [the trial court] concluded, as did HO Valles, that even before Father's death, the parents chose to limit PGM's contact with D.C. However, it was evident that Mother and Father did not fully cut off contact with PGM. And[,] even after Father's death, Mother continued to offer to set up visits for PGM to see D.C. In her complaint for custody, and again in her petition for special relief, PGM admitted that Mother offered to meet with her on multiple occasions in public locations to effectuate visits. The fact that PGM did not like the types of visits that Mother proposed to arrange does not give her, or [the trial court], justification to interfere in Mother's decision-making.

"[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." **Troxel**, 530 U.S. at 72-73. Here, by seeking court-ordered visitation in the face of Mother's decision to limit contact between PGM and D.C. to public visits, PGM was asking the court to supplant her preferences for those of an otherwise fit parent, which was something [the trial court] could not constitutionally do.

### CONCLUSION

Because [the trial court] concluded that court-ordered visitation would be an unconstitutional infringement on Mother's fundamental right to make decisions concerning the care, custody, and control of her children, its decision should be affirmed.

J-A26043-19

Trial Court Opinion, 6/17/19, at 6-9.[5]

We observe that our case law has established public policy regarding the award of partial physical custody to a grandparent where at least one of the child's natural parents is alive and the other is deceased. This Court has stated that Pennsylvania has a strong public policy "favoring grandparent involvement in a child's life." **K.T. v. L.S.**, 118 A.3d 1136, 1164 (Pa. Super. 2015); **see also Hiller v. Fausey**, 904 A.2d 875, 886 (Pa. 2006) (stating, "[W]e refuse to close our minds to the possibility that in some instances a court may overturn even the decision of a fit parent to exclude a grandparent from a grandchild's life, especially where the grandparent's child is deceased and the grandparent relationship is longstanding and significant to the grandchild")[6]; **Commonwealth ex rel. Goodman v. Dratch**, 159 A.2d 70, 71 (Pa. Super. 1960) (stating, "Unless there [is] some compelling reason, we do not believe that a grandchild should be denied visitation to his

_____

[5] In her brief, PGM complains about the trial court's reliance on **D.P.** as being misplaced. We find her argument lacks merit, as the trial court did not rely on **D.P.** as being factually similar to the instant case, and cited only general legal principles from the case.

[6] In **Hiller**, our Supreme Court addressed the United States Supreme Court's plurality decision in **Troxel** to determine the constitutionality of a Pennsylvania statute, 23 Pa.C.S. § 5311 (repealed effective January 24, 2011, and replaced by the Act), that governed the award of partial custody or visitation to grandparents upon the death of their child who is also the grandchild's parent. The Pennsylvania Supreme Court in **Hiller** held that the trial court's application of the statute was constitutional. In the instant appeal, PGM does not challenge the constitutionality of the trial court's application of the current statute, 23 Pa.C.S. § 5328(c).

- 24 -

grandparents"). In **Commonwealth ex rel. Williams v. Miller**, 385 A.2d

992 (Pa. Super. 1978), this Court stated:

> Except under unusual circumstances, no child should be cut off entirely from one side of [his or her] family. [V]isits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which cannot derive from any other relationship. If animosities continue between the parties, and result in adverse [e]ffects on [the child] . . . , a visitation order may be revised, even to the extent of retracting visitation.

**Id.** at 995 (internal citations omitted) (reversing trial court order denying

maternal grandmother visitation with grandchild following mother's death;

father's "mistrust" of maternal grandmother was not valid reason for denying

grandmother visitation; and, if enforcing visitation away from child's home

presents harmful effects on child, trial court may specify place and conditions

of visitation). However, there may be instances in which the facts and

circumstances support a finding that a grandparent's claim for visitation is not

appropriate. This is one of those cases.

In this case, particularly the facts discussed above, Father's suicide, and

the animosity between PGM, Father, and Mother prior to (and following)

Father's death, present grounds to sustain the trial court's order denying PGM

partial physical custody. Because Mother was a fit parent and because she

presented credible concerns regarding the Children's visitation with PGM, the

trial court did not err or abuse its discretion in determining that it would not

be in the best interest of the Children for PGM to have unsupervised partial

physical custody.  Hence, PGM's visits were properly left to Mother's discretion.

We affirm the trial court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/2/2020